ESTATE OF CASIMIR MACHOWSKI ET AL. *v.* INLAND
WETLANDS COMMISSION OF THE
CITY OF ANSONIA ET AL.
(AC 33710)

Beach, Sheldon and Peters, Js.

Argued April 11—officially released September 4, 2012

*Dominick J. Thomas, Jr.*, for the appellant (named plaintiff).

*Marjorie Shansky*, for the appellee (named defendant).

*Opinion*

BEACH, J. The plaintiff estate of Casimir Machowski[1] appeals from the judgment of the trial court dismissing

---

[1] Tug, LLC, a contract purchaser of 135 Hill Street, Ansonia, was also a plaintiff in this matter. The trial court found that Tug, LLC, was not aggrieved by the decision of the inland wetlands commission of the city of Ansonia, and Tug, LLC, is not a party to this appeal. For sake of clarity, we refer to the estate of Casimir Machowski as the plaintiff.

The "estate of Casimir Machowski" is not, standing alone, an entity that can sue or be sued. See *Isaac* v. *Mount Sinai Hospital*, 3 Conn. App. 598, 600, 490 A.2d 1024, cert. denied, 196 Conn. 807, 494 A.2d 904 (1985). We requested and received supplemental briefs on the issue of whether we had subject matter jurisdiction to proceed. A close review of the court file reveals that the citation accompanying the complaint states that the commission was to answer to the estate "c/o Reverend Francis Zlotkowski, Executor . . . ." The file is replete with references to the two executors. The initial application to the commission, for example, named as property owner the estate in care of both executors. An executor specifically authorized Tug, LLC, to act on behalf of the estate in zoning matters. The status of the property was affirmed by both executors. The trial court carefully found that

its appeal from the decision of the defendant inland wetlands commission of the city of Ansonia (commission),[2] denying the plaintiff a permit to conduct regulated activities on a parcel of real estate. On appeal, the plaintiff claims that the trial court improperly applied the substantial evidence test in its review of the reasons given by the commission for denying the plaintiff's application. We agree and reverse the judgment of the trial court.

The trial court found the following facts. "The plaintiff . . . is the owner of property known as 135 Hill Street, Ansonia [property]. The sixteen acre parcel is located in an A Residence zone, is undeveloped and contains 1.8 acres of wetlands and watercourses. Tug, LLC [Tug], acting as the authorized agent of the property owner, was a contract purchaser of [the property] when it submitted an application for permission to conduct a regulated activity to the [commission] on March 20, 2008. Although the initial plans contemplated twenty age restricted units contained within ten buildings, the revised plans requested eighteen units, housed in nine duplex buildings. The proposed use of the parcel is a permitted use in an A Residence zone. Development was projected on approximately 7.5 acres and all activity was limited to the upland review area. The proposal

the "plaintiff, estate of Casimir Machowski, acting through its coexecutors, Reverend Francis Zlotkowski and Ann Zech," was an aggrieved party.

Although bringing the action in the name of the estate raised a substantial question, in the circumstances of this case, we conclude that the executors were the real parties in interest, were named in operative documents, and were effectively treated as parties by the other parties and the court. In these circumstances, dismissal would result in substantial injustice. See *Federal Deposit Ins. Corp.* v. *Retirement Management Group, Inc.*, 31 Conn. App. 80, 84–85, 623 A.2d 517, cert. denied, 226 Conn. 908, 625 A.2d 1378 (1993). In light of this conclusion, no action is necessary as to the plaintiff's motion to substitute.

[2] The commissioner of the department of environmental protection was also named as a defendant. Only the commission is involved in this appeal.

for development did not involve the disturbance of any existing wetland or watercourse.

"The property contains steep slopes, ranging from 460 feet above mean sea level, to 260 feet above mean sea level. During the course of construction, 30,000 cubic yards of fill would be required. Of this amount, 20,500 cubic yards of fill must be brought to the property by truck. The [commission] devoted three nights of public hearings to the proposal, June 4, 2009, September 3, 2009, and October 1, 2009. The proposed development ignited vehement opposition from neighboring home-owners. Residents of Shortell Drive, Hunters Lane and Sharon Drive, whose properties are situated down-stream from the proposed development, expressed con-cern over the effect increased development would have on an already severe flooding situation.

"During the course of the public hearings, the com-mission received expert testimony from Bryan Nest-eriak, an engineer engaged by the [plaintiff], and an outside reviewing engineer engaged by the commission, David Nafis, P.E. At its November 5, 2009 meeting, the commission voted. A motion was made to deny the application, based upon [the following] reasons and findings: 'The development proposes 30,000 cubic yards of fill, 9500 cubic yards of cut equal to 20,500 cubic yards of new fill. There is a feasible and prudent alternative to placing the detention basin in fill on the extreme slope, comprised of earth embankment, and immediately upslope of a wetland area. The proposed location is inconsistent with [department of environmental protec-tion (department)] 2002 Soil and Erosion and Sediment Guidelines Control and good engineering practice. The extensive amount of fill creates an extreme erosion hazard, immediately upstream of a wetlands area. The downstream swale, which appears to be a component of the storm water management plan to avoid adverse impact to receiving wetlands, including flooding, was

not indicated within the scope of the application though its function as a downstream receptor makes it a "Regulated Activity." '

"Following discussion by the commission, which focused on the issue of the fill, and the divergent opinions provided by the experts concerning the proposed detention basin, the commission voted, 3-0, with one abstention, to deny the application." The plaintiff and Tug appealed from the commission's denial of their application to the Superior Court.

In its memorandum of decision, the court first determined that the plaintiff was aggrieved by the decision of the commission. The court determined that there was substantial evidence in the record to support the commission's first reason for denying the application, namely, the location of the detention basin.[3] The court noted that Tug did not propose to conduct any activity or perform any work within any wetland or watercourse on the property but, rather, it proposed to undertake substantial work in the upland review area, including constructing a detention basin that would be situated on a steep slope that is upslope of the wetland area. The court noted that, although no disturbance of a wetland or watercourse was contemplated, activity was proposed within the upland review or "buffer" area adjacent to the wetlands. The court agreed with the commission that the proposed activity would likely have a negative impact on the wetlands. Specifically, the court determined that the proposed detention pond would be built on a steep slope and that "any failure" of the basin would "clearly impact" the wetlands on the property and further exacerbate already severe downstream flooding conditions. The court also noted

---

[3] The court determined that the commission's second reason for denial, that pertaining to the swale, was not supported by substantial evidence. That determination has not been challenged.

Nafis' testimony in which he questioned the location of the detention basin on a steep slope adjacent to a wetland, opined that the use of excessive fill, particularly during construction, could create an erosion hazard, and mentioned the 2002 guidelines of the department, which guidelines caution against locating a detention basin on sloping topography. The court stated that the "plaintiff hypothesizes that the detention basin may not fail, and there will be no impact upon either the wetland areas, or the intermittent watercourse. This assertion, even if supported by expert testimony, is not sufficient to prevent a finding by the commission that an impact upon wetlands is likely." The court dismissed the plaintiff's appeal. This appeal followed.

The plaintiff claims that the court improperly applied the substantial evidence test when it affirmed the commission's determination that the proposed activity would adversely affect the wetlands or watercourses. Specifically, the plaintiff argues that the court failed to require that there be specific evidence in the record showing that the plaintiff's activities would adversely impact wetlands or watercourses.[4] We agree.

"Whether the substantial evidence test was applied properly by the trial court in its review of the [commission's] decision is a question of law over which our

[4] As a preliminary matter, we note that the court concluded that the plaintiff, acting through its coexecutors, Francis Zlotkowski and Ann Zech, was aggrieved by the commission's decision. See General Statutes § 22a-43 (a) (aggrievement conferred on "any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner . . . or any person owning or occupying land which abuts any portion of land within, or is within a radius of ninety feet of, the wetland or watercourse involved in any regulation, order, decision or action"); see also General Statutes § 45a-234 (25) (m) (estate executors given power "to deal with any such property and every part thereof in all other ways and for such other purposes or considerations as would be lawful for any person owning the same"). Aggrievement has not been challenged on appeal.

review is plenary. . . . [According to] the well established parameters of the substantial evidence test . . . [i]t is widely accepted that, [i]n reviewing an inland wetlands agency decision made pursuant to [its regulations], the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . . Evidence of general environmental impacts, mere speculation, or general concerns do not qualify as substantial evidence. . . .

"The [Inland Wetlands and Watercourses Act (act)] is contained in . . . [General Statutes §§ 22a-28] through 22a-45, inclusive. Under the act the [commissioner of environmental protection] is charged with the responsibility of protecting inland wetlands and watercourses by . . . regulating activity which might have an adverse environmental impact on such natural resources. Under . . . §§ 22a-42 and 22a-42a, any municipality, acting through its legislative body, may authorize or create a board or commission to regulate activities affecting the wetlands and watercourses located within its territorial limits and any such board

or commission is authorized to grant, deny or limit any permit for a regulated activity. . . . In determining the impact of a proposed activity on inland wetlands and watercourses, an inland wetlands agency must consider the criteria established in the act and in applicable municipal regulations. Section 22a-41 (a) of the act sets forth specific criteria that must be considered in deciding whether an application for a wetlands and watercourses permit should be granted. Specifically, the statute requires the consideration of: (1) The environmental impact of the proposed regulated activity on wetlands or watercourses . . . (3) The relationship between the short-term and long-term impacts of the proposed regulated activity on wetlands or watercourses and the maintenance and enhancement of long-term productivity of such wetlands or watercourses; (4) Irreversible and irretrievable loss of wetland or watercourse resources which would be caused by the proposed regulated activity . . . [and] (5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened by the proposed regulated activity . . . ." (Citations omitted; internal quotation marks omitted.) *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, 269 Conn. 57, 70–72, 848 A.2d 395 (2004).

Sections 7.2 and 7.3 of the inland wetlands and watercourses regulations of the city of Ansonia require the commission, when evaluating the environmental impact of a proposed activity and the importance of a regulated area, to consider, inter alia, "[i]ncreased erosion problems resulting from changes in grades, ground cover, or drainage features. . . . The extent of additional siltation or leaching and its effect on water quality and aquatic life. . . . The function of the area as part of the natural drainage system for the watershed. . . ."

"The sine qua non of review of inland wetlands applications is a determination whether the proposed activity will cause an adverse impact to a wetland or watercourse." *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission,* supra, 269 Conn. 74. "Determining what constitutes an adverse impact on a wetland is a technically complex issue. . . . Inland wetlands agencies commonly rely on expert testimony in making such a finding." (Citation omitted.) Id., 78.

The plaintiff argues that there is no specific evidence in the record that the fill needed for the project or the location of the detention basin in the upland review area would, in fact, adversely impact the downslope wetland. The plaintiff contends that the court simply assumed that (1) the detention basin would likely fail and (2) that such failure would adversely affect the downslope wetlands, without any evidence in the record to support either assumption. The plaintiff contends that the commission's expert referred only to a *potential* impact, but that there was no opinion that an adverse impact was *likely* should the detention basin fail, or, moreover, that a failure of the detention basin was reasonably likely to occur.

The plaintiff analogizes the present case to *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission,* supra, 269 Conn. 57. In *River Bend Associates, Inc.,* the defendant, the inland and wetlands commission of the town of Simsbury, had denied the plaintiffs' revised application for a permit to undertake certain regulated activities in conjunction with plans to construct a residential development on a parcel of real estate that contained wetlands and watercourses. Id., 60. The defendant reasoned that the proposed development would adversely affect the on-site wetlands and wildlife. Id., 62–63. The trial court dismissed the plaintiffs' appeal, holding that there was substantial evidence

to support the denial of the plaintiffs' revised application. Id., 65. On appeal to our Supreme Court, the plaintiffs claimed that the trial court improperly applied the substantial evidence test by failing to require that there be specific evidence in the record showing that the plaintiffs' activities would in fact adversely impact the wetlands or watercourses and by failing to require that the decision to deny the application be supported by more than a possibility of adverse impact. Id., 69–70. Our Supreme Court agreed. Id., 70. One of the reasons that the defendant denied the plaintiffs' application was the possibility that the release of treated storm water into the upland review areas from the storm water management basins might have an adverse impact on the site's wetlands and watercourses. Id., 80. The property had previously been used to grow tobacco and the soil contained pesticides associated with that activity. Id., 62, 75. Storm water detention basins were incorporated into the project, and the plaintiffs' expert testified that 36 percent of nitrogen, copper and zinc in the storm water would not be removed by the storm water control devices and would flow into the wetlands and watercourses. Id., 80. Our Supreme Court concluded that the substantial evidence test had not been satisfied because there was no evidence that the elements that remained in the storm water would adversely affect a wetland or watercourse. Id., 81.

The present case is analogous to *River Bend Associates, Inc.*, in that there was no evidence before the commission that the activity proposed by the plaintiff would have an adverse affect on the wetlands. Our careful review of the record reveals that there was no evidence supporting a likelihood that the detention basin would fail because of its location or otherwise.[5] There also was no evidence specifically indicating what

---

[5] There similarly was no evidence specifically suggesting that excessive amounts of fill would probably erode into wetlands.

effect, if any, a failure of the detention basin would have on the downslope wetlands.

Evidence submitted by the commission's experts referred only to potential damage to wetlands and mentioned the possibility that the detention basins would fail.[6] For instance, at the September 3, 2009 public hearing, Martin Brogie, the commission's soil scientist, testified that "the site should remain static after construction, *unless* there's some kind of a slope failure . . . ." (Emphasis added.) Additionally, Nafis stated, in a September 30, 2009 report submitted by Nafis & Young, a firm engaged by the commission, that "[o]ur biggest concern is the location and stability of the detention pond, which does not meet the 2002 [department Guidelines for Soil Erosion and Sediment Control]. The potential for damage to wetlands and adjacent properties will be significant in the event of a failure." Evidence regarding *potential* impacts to wetlands *in the event* of a failure of the detention basin does not in itself amount to substantial evidence. See *AvalonBay Communities, Inc.* v. *Inland Wetlands & Watercourses Agency,* 130 Conn. App. 69, 78–84, 23 A.3d 37 (record lacked substantial evidence to support denial of permit application where reasons for denial based on speculation regarding potential impacts to wetlands), cert. denied, 303 Conn. 908, 32 A.3d 962 (2011).

The Nafis & Young report concluded that the location of the detention basin was not consistent with the department's 2002 Guidelines for Soil Erosion and Sediment Control because it was to be located on a less

---

[6] The plaintiff had submitted to the commission more than one plan regarding the subject property. We address only the evidence presented as in connection with the plaintiff's revised application for permission to conduct regulated activity in connection with its plan, the denial of which application is the subject of this appeal.

gentle slope than recommended. The guidelines do not themselves have the force of law,[7] and although they may contain a set of beneficial recommendations, non-adherence does not in itself imply a likelihood of adverse impact on wetlands. The requirements of *River Bend Associates, Inc.*, still must be met to justify a denial in these circumstances.

The commission noted that residents of Shortell Drive who lived downstream from the property had testified at the public hearings as to their experiences in the past with flooding. The residents' experiences relate only to the conditions of the wetland area and do not address what specific impact the proposed regulated activity would have on the wetlands.

In sum, the evidence presented by the commission regarding both the prospect of a failure and the potential impact such a failure would have on the wetlands is speculative in nature. Therefore, we conclude that the court improperly applied the substantial evidence test.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment directing the commission to grant the plaintiff's application.

In this opinion the other judges concurred.

[7] "Although [the 2002 Connecticut Guidelines for Soil Erosion and Sediment Control are] intended to be authoritative statements of the best possible implementations of the applicable laws, the guidelines state that they do not themselves have the force of law, as the use of the [g]uidelines does not relieve the user of the responsibility of complying with laws and regulations that cite the [g]uidelines." (Internal quotation marks omitted.) *Finley* v. *Inland Wetlands Commission*, 289 Conn. 12, 45 n.3, 959 A.2d 569 (2008) (*Norcott, J.*, concurring). Nafis indicated a consistent position in his comment at the October 1, 2009 hearing before the commission that "[w]ell, [the detention pond] could work, I just don't—I would feel much more comfortable if that—going back to the guidelines, [the] guidelines say try to keep away from steep slopes, escarpments and slopes. Keep it off that if you can and in this plan they can't." Nafis did not testify that any statutes or regulation would be violated by construction of the project.