******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# SUSAN COHEN *v.* DEPARTMENT OF ENERGY AND ENVIRONMENTAL PROTECTION ET AL.
## (AC 44547)
## (AC 44551)

Elgo, Suarez and Lavine, Js.

*Syllabus*

The plaintiff homeowner and the intervening plaintiffs, the town of Greenwich and its harbor management commission, appealed to this court from the judgment of the Superior Court dismissing the plaintiff's administrative appeal from the final decision of the deputy commissioner of the named defendant, the Department of Energy and Environmental Protection, granting an application to construct a residential dock adjacent to the plaintiff's waterfront property. In their application, the defendants M and A proposed to construct the dock on a lot they owned that consisted of tidal wetlands fronting Greenwich Cove and bordering the plaintiff's residence. The plaintiff sought to intervene in the proceedings before the department pursuant to the applicable statute (§ 22a-19) and regulation (§ 22a-3a-6 (k)) to oppose M and A's application. A department hearing officer concluded that the plaintiff lacked standing to intervene under § 22a-3a-6 (k) of the regulations but granted her intervenor status under § 22a-19 to pursue her claim of visual degradation to her property and environmental harm that she alleged would be caused by the proposed dock. At a hearing the department conducted to receive public comment on M and A's application, the commission submitted a letter, stating, inter alia, that it could not make a favorable recommendation concerning the application and that, pursuant to statute (§ 22a-113n), recommendations made by the commission consistent with the town's harbor management plan are binding on state officials when making regulatory decisions. The hearing officer issued a proposed final decision recommending approval of M and A's application. The hearing officer determined that the commission's comment letter did not constitute substantive evidence and that the department was not bound by its recommendation. The hearing officer further determined that the only recommendations contemplated by § 22a-113n (b) are those contained in a harbor management plan that has been adopted by a harbor management commission and approved by the department pursuant to statute (§ 22a-113m). The hearing officer concluded that nothing in the town's harbor management plan prevented him from recommending to the department that M and A's application be approved. Finally, the hearing officer concluded that the plaintiff had failed to satisfy her burden of proving that the proposed dock was reasonably likely to have an unreasonable environmental impact on nearby viewpoints and vistas or that it would result in other environmental harm. The deputy commissioner thereafter adopted the hearing officer's proposed decision. On appeal to the Superior Court, the intervenors and the plaintiff claimed, inter alia, that the deputy commissioner improperly concluded that § 22a-113n did not authorize the commission to make recommendations that are binding on the department. The court rendered judgment dismissing the appeals, concluding, inter alia, that the deputy commissioner's final decision was supported by substantial evidence and that she had properly allocated the burdens of proof between the plaintiff and M and A. The court further upheld the deputy commissioner's determination that § 22a-113n empowers harbor management commissions to make recommendations that are binding on the department only when such recommendations arise from content already included in an approved harbor management plan. *Held*:

1. The intervening plaintiffs could not prevail on their claim that the Superior Court incorrectly concluded that § 22a-113n did not authorize the commission to make recommendations that were binding on the department concerning dock permit applications within the commission's jurisdiction:

   a. Contrary to M and A's assertion that the intervenors' claim was not properly before this court because it was derivative of the same claim

brought by the plaintiff, the intervenors' standing was not dependent on the plaintiff's standing to bring the same claim, § 22a-113n (b) having provided the intervenors with an independent jurisdictional basis to pursue their claim, as § 22a-113n (b) implicated their authority to make recommendations to state and local officials concerning activities affecting harbor areas within the intervenors' jurisdiction; moreover, the intervenors' assertion in their motion to intervene that the deputy commissioner's decision could have far-reaching consequences for them with regard to any application, including future dock applications, that require a permit from the department, was precisely the sort of concrete, particularized allegation sufficient to raise a colorable claim of injury; furthermore, dismissal of the intervenors' claim would require them to adjudicate the claim in another forum, which would be redundant and result in unnecessary delay and a waste of judicial resources in light of the rulings issued by the deputy commissioner and the Superior Court concerning the proper construction of § 22a-113n.

b. This court was not persuaded by M and A's contention that it should refuse to adjudicate the proper construction of § 22a-113n, which was based on their claim that the issue of whether a harbor management commission's recommendation is binding on the department was never properly raised in the administrative proceedings; although the commission's comment letter was not evidence to be considered in determining whether to grant M and A's application, the commission having elected not to appear in the administrative proceedings and submit written testimony pursuant to statute (§ 22a-99), the nature of the intervenors' participation before the Superior Court substantially differed from their involvement before the department such that the issue concerning the proper interpretation of § 22a-113n was properly before this court.

2. The intervenors could not prevail on their claim that § 22a-113n granted the commission the authority to make recommendations that are binding on the department concerning individual dock placements within the commission's jurisdiction: the plain text of § 22a-113n authorizes harbor management commissions to make such recommendations only when they arise from content already included in an approved harbor management plan, and the Greenwich Harbor Management Plan did not discuss the permitting or placement of individual docks; moreover, the relationship of § 22a-113n to other statutes within the regulatory framework constrained the department's authority to issue individual permits for docks in areas designated as unsuitable in harbor management plans, which are subject to the department's annual review; furthermore, the lack of broad veto power on the part of harbor management commissions over individual dock permits does not render the plain text of § 22a-113n unworkable, as harbor management commissions are permitted to set forth criteria concerning individual dock placement that become binding on the department once a harbor management plan is approved.

3. The plaintiff could not prevail on her claims that the hearing officer incorrectly allocated the burdens of proof between her and M and A during the administrative hearing, and that the Superior Court incorrectly concluded that substantial evidence supported the deputy commissioner's determination that there were no feasible and prudent alternatives to the dock proposed by M and A:

a. This court declined to review the plaintiff's claim that the Superior Court's determination that she had demonstrated classical aggrievement overruled, sub silentio, the hearing officer's determination that she had failed to demonstrate standing to intervene pursuant to § 22a-3a-6 (k) (1) (B) of the regulations; although the plaintiff contended that the hearing officer incorrectly applied to her the burden of proof for environmental intervenors set forth in § 22a-19 when she should not have been required to resort to § 22a-19 as a basis for intervention, she never properly raised in the Superior Court the issue of her standing pursuant to § 22a-3a-6 (k) (1) (B), her argument on appeal confused the hearing officer's determination concerning her standing with the court's determination that she established aggrievement sufficient to invoke the court's subject matter jurisdiction, and the plaintiff pleaded different factual allegations in her complaint to the Superior Court than she did in her motion to intervene before the hearing officer.

b. The plaintiff's claim that the hearing officer incorrectly placed the burden of proof on her to show that there were feasible alternatives to the proposed dock was unavailing, as she failed to understand that properly alleging standing under § 22a-19 (a) to be made a party to an

administrative proceeding requires a showing of only a colorable claim of environmental harm, whereas an intervenor already joined in the litigation is required to produce evidence of unreasonable environmental impairment before the department is required to consider feasible alternatives under § 22a-19 (b); moreover, the court did not determine that M and A had the burden of showing the absence of feasible alternatives to the proposed dock only if the plaintiff made a prima facie showing of environmental harm under § 22a-19, as there was no requirement that M and A show the absence of, or that the department consider, feasible alternatives to the dock in light of the plaintiff's failure to set forth substantial evidence that the dock would or was reasonably likely to cause unreasonable environmental harm.

c. The court properly concluded that there was substantial evidence in the record to support the hearing officer's determination that there were no feasible and prudent alternatives to the proposed dock; the hearing officer noted that department staff had considered and rejected fourteen alternative designs to the structure before ultimately concluding that the approved structure would have the least adverse impact on the surrounding tidal wetlands, and, although the plaintiff presented expert testimony that the proposed dock would negatively impact the surrounding wetlands, the hearing officer acted within his discretion in crediting expert testimony presented by the department and M and A that the proposed structure would have minimal impact on the tidal wetlands.

Argued February 14—officially released October 18, 2022

*Procedural History*

Appeals from the decision by the named defendant approving the construction of a dock and boat lift on certain real property of the defendant Mark Marache et al., and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and transferred to the judicial district of Hartford, Land Use Litigation Docket; thereafter, the court, *Moukawsher, J.*, granted the motion to intervene as party plaintiffs filed by the town of Greenwich et al.; subsequently, the court denied the motions to dismiss filed by the named defendant et al.; thereafter, the case was tried to the court, *Moukawsher, J.*; judgment dismissing the appeals, from which the plaintiff and the intervenor town of Greenwich et al. filed separate appeals with this court. *Affirmed.*

*James R. Fogarty*, with whom was *Bruce F. Cohen*, for the appellant in Docket No. AC 44547 and appellee in Docket No. AC 44551 (plaintiff).

*Aamina Ahmad*, assistant town attorney, for the appellants in Docket No. AC 44551 (intervenor town of Greenwich et al.).

*Michael W. Lynch*, assistant attorney general, with whom were *David H. Wrinn*, assistant attorney general, and, on the brief, *William Tong*, attorney general, *Clare Kindall*, solicitor general, and *Matthew I. Levine*, assistant attorney general, for the appellee in both appeals (named defendant).

*John P. Casey*, with whom, on the brief, were *Thomas J. Donlon* and *Jenna M. Scoville*, for the appellees in both appeals (defendant Mark Marache et al.).

*Opinion*

SUAREZ, J. In these related appeals, the plaintiff, Susan Cohen, in Docket No. AC 44547, and the intervening plaintiffs, the Harbor Management Commission of the Town of Greenwich (commission) and the town of Greenwich (town), in Docket No. AC 44551, appeal from the judgment of the Superior Court dismissing the plaintiff's administrative appeal from the final decision of the Deputy Commissioner of Energy and Environmental Protection (deputy commissioner) granting the application of the defendants Mark Marache and Marti Marache to construct a residential dock and pier. On appeal, both the plaintiff and the intervening plaintiffs claim that the court improperly concluded that General Statutes § 22a-113n did not authorize the commission to make recommendations that are binding on the named defendant, the Department of Energy and Environmental Protection (department),[1] regarding applications for dock permits within the commission's jurisdiction. The plaintiff also claims that the court incorrectly determined (1) that the department applied the correct burdens of proof during the parties' administrative hearing, and (2) that there was substantial evidence in the record to support the department's determination that there were no feasible and prudent alternatives that would reduce the proposed dock's environmental impact. We affirm the judgment of the Superior Court.

The record reveals the following facts, which the department found or which are undisputed, and procedural history. The plaintiff and the defendants own neighboring properties in the Riverside district of Greenwich. The plaintiff resides at 7 Perkely Lane and the defendants reside at 12 Perkely Lane. In addition to their principal residence, which is located on the west side of Perkely Lane, the defendants also own an undeveloped lot on the easterly side of the road (subject property), located at 15 Perkely Lane, which fronts Greenwich Cove and borders the plaintiff's residence to the north. The subject property is "made up of two bands of tidal wetlands, a band of 'low marsh' below [the median high water line] and along the edge of Greenwich Cove, and a band of 'high marsh' just inland of the low marsh, extending approximately to [the median high water line]." Perkely Lane is situated within a heavily developed section of Greenwich Cove where many waterfront homes, including the plaintiff's residence, are improved by docks and other man-made structures.

On April 14, 2015, the defendants, pursuant to the Structures, Dredging and Fill Act of 1939, General Statutes § 22a-359 et seq. (structures, dredging and fill act); the Tidal Wetlands Act of 1969 (tidal wetlands act), General Statutes § 22a-28 et seq.; the Coastal Management Act of 1980 (coastal management act), General Statutes § 22a-90 et seq.; and attendant state regula-

tions, Regs., Conn. State Agencies § 22a-30-1 et seq.; submitted to the department an application for permission to construct a residential dock and boat lift (proposed structure) on the subject property.[2] The defendants' application proposed that the structure be located six inches waterward of the mean high water line,[3] in an effort to comply with a town zoning ordinance.[4] In addition, the defendants intended to access the proposed dock by walking through the tidal wetlands on the subject property to reach an access ladder leading to a pier. See footnote 2 of this opinion. On March 6, 2018, the department issued a tentative determination to approve the application, with notice of the tentative determination published in the Greenwich Time, and a draft permit was prepared.[5]

On March 26, 2018, the plaintiff's husband, Bruce F. Cohen, acting pursuant to General Statutes §§ 22a-32[6] and 22a-361 (b),[7] submitted to the department a petition for a public hearing on the defendants' application.[8] Notice of the hearing was published in the Greenwich Time on August 12, 2018.

On June 6, 2018, the plaintiff filed a "Verified Petition and Notice of Intervention," pursuant to § 22a-3a-6 (k) (1) (B) of the Regulations of Connecticut State Agencies[9] and General Statutes § 22a-19[10] of the Connecticut Environmental Protection Act of 1971 (CEPA), General Statutes § 22a-14 et seq., seeking status as an intervening party in the defendants' application that was proceeding before the department. Under § 22a-3a-6 (k) of the regulations, the plaintiff alleged, inter alia, that the erection and maintenance of the proposed structure would "have a significant adverse impact on the visual character and value of [her] home" and that permitting the defendants to "evade local zoning restrictions" by situating their dock "outside of local regulatory jurisdiction" would "establish a precedent that will have impact on the [plaintiff] because of similar conditions existing in the nearby . . . neighborhood."

Under § 22a-19, which bestows statutory standing on intervening parties alleging that a proposed permit "involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state"; see General Statutes § 22a-19 (a) (1); the plaintiff alleged, inter alia, that the proposed dock would (1) run contrary to the department's policy " 'to preserve the wetlands and to prevent the despoliation and destruction thereof' "; (2) "degrade visual quality through a significant alteration of the natural features of the tidal wetland in which [the dock] is proposed to be located"; and (3) "lead to a proliferation of permit applications for docks in inappropriate locations, thereby impacting in a significant manner other and more extensive natural resources such as tidal wetlands." The defendants filed

an objection on June 13, 2018.

On July 9, 2018, a department hearing officer issued a ruling on the "Verified Petition and Notice of Intervention," granting the plaintiff intervening party status as to one allegation, made pursuant to § 22a-19, concerning the visual impact of the proposed structure, and denying intervening party status on all other grounds alleged. With regard to the plaintiff's claims under § 22a-3a-6 (k) of the regulations, the hearing officer stated that a proposed intervening party must demonstrate that her "legal rights, duties or privileges will or may reasonably be expected to be affected by the decision in the proceeding." (Internal quotation marks omitted.) The hearing officer then clarified that, although that standard "is not identical to the 'classical aggrievement' standard employed by our courts, judicial analysis of that standard is instructive when defining what constitutes a legal right, duty or privilege." Applying the classical aggrievement analysis set forth in our Supreme Court's decision in *Canty* v. *Otto*, 304 Conn. 546, 557, 41 A.3d 280 (2012), the hearing officer concluded that the plaintiff's first allegation, regarding the proposed structure's potential to visually impact and, thereby, affect the economic value of her residence, "lack[ed] specific facts to demonstrate how that damage will occur." The hearing officer also determined that the "second and third allegations, regarding an alleged [department] policy about the interface between coastal structures and local zoning, are not personal but, instead, are general interests shared by all members of the community." The hearing officer concluded, accordingly, that the plaintiff did not have standing to intervene under § 22a-3a-6 (k) of the regulations.

With regard to the plaintiff's environmental claims under § 22a-19, the hearing officer clarified that intervening parties must make specific, factual allegations that set forth the nature of the alleged unreasonable pollution, impairment, or destruction of the public trust in the air, water or other natural resources of the state. Applying that standard, the hearing officer determined that the plaintiff's first and third claims, which alleged that the proposed dock would despoil and destroy "the tidal wetland of Long Meadow Creek" and lead to "a proliferation of permit applications for docks in inappropriate locations," were not pleaded with sufficient specificity to confer on her statutory standing pursuant to § 22a-19.[11] By contrast, the hearing officer concluded that the plaintiff's second claim, which alleged that the proposed dock structure will degrade the visual quality of the tidal wetlands through a significant alteration of its natural features, was sufficient to grant intervening party status. Specifically, the hearing officer determined that "the allegation alleges an environmental harm implicated in a review pursuant to the coastal management act and indicates the likeliness that the harm will occur . . . ." Accordingly, the

hearing officer granted the plaintiff standing as an intervening party only as to her second allegation of environmental harm.

On August 13, 2018, the plaintiff filed a motion for reconsideration regarding the hearing officer's ruling on her "Verified Petition and Notice of Intervention," seeking to expand the scope of her participation as an intervening party. In support of her motion, the plaintiff submitted to the hearing officer an affidavit from William L. Kenny, a certified professional wetlands scientist, which detailed "potential impacts to tidal wetlands from pedestrian access to the dock and the operation of a motorboat in the proximity of a dock." On September 17, 2018, the hearing officer granted the plaintiff's motion for reconsideration, thereby expanding the scope of her intervening party status under § 22a-19 to include "issues of unreasonabl[e] impacts to tidal wetlands from pedestrian access to the proposed structure and operation of a motorboat in the vicinity of the structure." The hearing officer clarified, however, that the plaintiff's standing to intervene in the application proceeding was strictly limited to the specific environmental allegations "identified in this ruling and in the July 9, 2018 ruling."

On September 13, 2018, the department held a hearing to receive public comment at Greenwich Town Hall.[12] Although General Statutes § 22a-99 entitled the commission to submit written testimony to the department and "appear by right as a party to any hearing before [the department] concerning any permit or license to be issued . . . for an activity occurring within the coastal boundary of the municipality," the commission chose neither to submit written testimony nor to intervene as a party to the proceeding.

On September 21, 2018, the commission submitted to the department a written comment letter (comment letter) that set forth findings and recommendations concerning the defendants' application. Specifically, the commission voiced concerns regarding the "precedent-setting implications and potential environmental impacts of [the proposed structure] and similar proposals," as well as the proposed structure's compliance with town zoning regulations. In addition, the commission argued, pursuant to § 22a-113n, that recommendations made by the commission "consistent with and adequately supported by" the town's Harbor Management Plan (plan) are "binding on any official of the state of Connecticut when making regulatory decisions . . . affecting [the Greenwich Harbors Area], unless such official shows cause why a different action should be taken." Accordingly, the commission concluded: "[The commission] is not able to make a favorable recommendation concerning the proposed project absent an understanding of the [department's] policy concerning state review and approval of proposed water-access

structures located entirely in the [p]ublic [t]rust [a]rea waterward of the [median high water] line and affecting tidal wetlands and other coastal resources. The [commission] therefore formally recommends that the [department] provide such a policy statement to be considered in the ongoing public hearing process and any subsequent appeals. In addition, the [commission] is concerned that the policies of [the plan] were not considered by the [department] in the application review process, which it is obliged to do, and formally recommends that such consideration now be given in the ongoing public hearing process and any subsequent appeals."

On September 24, 2018, the department held an evidentiary hearing at its headquarters in Hartford. At that hearing, the defendants presented expert testimony from James J. Bajek, an expert in coastal structure permitting, and R. Scott Warren, an expert in coastal resources and tidal wetlands ecology. Both Bajek and Warren testified that the defendants' application complied with the statutory and regulatory criteria and policy relevant to the proposed regulated activities. The department also offered testimony from Susan Jacobson, the department's permit analyst, who testified that the proposed structure would comply with the tidal wetlands act.

The plaintiff offered testimony in opposition to the proposed dock, in which she expressed concern over the potential visual impact that the dock would have on the surrounding area. In addition, the plaintiff presented expert testimony from Kenny, who stated that the proposed dock did not comply with portions of the tidal wetlands act due to the potential environmental impact stemming from pedestrian access to the proposed dock or motorboat activity in the vicinity of the proposed dock. Kenny also questioned whether the application complied with the coastal management act's policy regarding impacts to vistas and viewpoints.

On September 26, 2018, the hearing officer issued a posthearing directive, in which he ordered the parties to submit supplemental filings addressing "relevant statutory and regulatory policies and criteria, including the coastal management act, tidal wetlands act and statutes concerning structures, dredging and filling, and relevant implementing regulations" as well as "the significance of the [comment letter] filed by the [commission], particularly in the context of . . . § 22a-113n." The parties each filed posthearing briefs and reply briefs.

On February 22, 2019, the hearing officer issued a proposed final decision recommending that the defendants' application be approved and that a permit for the proposed dock be issued. In his decision, the hearing officer first addressed the argument set forth in the commission's public comment letter alleging that the

commission's recommendation regarding the defendant's application was binding on the department. As an initial matter, the hearing officer clarified that the commission's public comment letter was submitted as a public comment, intended to guide the hearing officer's inquiry, and not as substantive evidence upon which the hearing officer could base his determination approving or disapproving the defendants' application. Specifically, the hearing officer noted that, "[i]n order to place evidence into the record . . . status as an intervening party . . . is generally required." Although the commission could have sought status as an intervening party in the proceeding as a matter of right, pursuant to § 22a-99, it did not do so in the proceedings before the hearing officer. Accordingly, the hearing officer concluded that, "while . . . [the commission's] comment . . . [identifies] issues of local concern, and while the issues identified in the comment that are relevant to this proceeding are addressed elsewhere in this decision, it is not at all clear that any type of 'binding recommendation' can be made by submitting a public comment."

The hearing officer also determined that the commission's public comment letter never explicitly recommended that the department deny the defendants' application. Rather, the hearing officer found that "the only 'formal' recommendation [made by the commission] is a request that the department provide a policy statement for consideration." The hearing officer concluded that, because no statutory or regulatory criteria required that such a policy statement be issued before a permit for the proposed regulated activity is issued, the department was not bound by the recommendation set forth in the public comment letter.

The hearing officer then determined that, even if the recommendation was properly submitted to the department, the statutory scheme regulating dock permitting would not prevent the department from approving the defendants' application or issuing a permit. Specifically, the hearing officer concluded that the plain text of § 22a-361 (h), which mandates that the department "shall not issue a certificate or permit to authorize any dock or other structure in an area that was designated as inappropriate or unsuitable for such dock or other structure in a harbor management plan approved and adopted pursuant to section 22a-113m," did not require that such a determination be made by the commission. Rather, the hearing officer concluded that the department, as opposed to the commission, is charged in the first instance with determining whether a dock is in an area designated as inappropriate or unsuitable in an approved harbor management plan.

The hearing officer also interpreted the requirements of § 22a-113n (b), concluding that the plain language "does not discuss the recommendations of a [harbor management commission] regarding individual dock

applications. The only 'recommendations' contemplated by this section are those contained in the harbor management plan. It is entirely plausible that the recommendations that are binding, then, are those contained in an adopted harbor management plan, and that a recommendation concerning an individual dock is simply advisory."

Applying §§ 22a-361 and 22a-113n (b) to the defendants' application, the hearing officer found that neither the plaintiff, nor the commission, had "identified any portion of [the plan] that indicate[d] that the location of the proposed dock is in an area identified as inappropriate or unsuitable" and that his "own review of [the plan] . . . revealed no restriction." Accordingly, the hearing officer concluded that nothing in the plan prevented the hearing officer from making a recommendation to the department that the defendants' application be approved.

The hearing officer then assessed the plaintiff's environmental claims, concluding that she had failed to satisfy her burden of proving that the proposed structure was reasonably likely to cause an unreasonable environmental impact. Specifically, the hearing officer determined that the plaintiff had failed to produce sufficient evidence demonstrating that the proposed structure would have an unreasonable impact on nearby viewpoints and vistas, that pedestrian access to and from the proposed structure would result in the damage or destruction of the surrounding low marsh area, and that motorboat access to and from the proposed structure would damage local tidal wetlands.

Finally, the hearing officer, relying on expert testimony produced by both the defendants and the department, determined that the defendants had met their burden of demonstrating that their proposed dock complied with the statutory and regulatory criteria set forth in the coastal management act; the structures, dredging and fill act; and the tidal wetlands act and associated regulations, § 22a-30-1 et seq. of the Regulations of Connecticut State Agencies. Specifically, the hearing officer concluded: "[T]he construction of the proposed structure will provide the [defendants] with reasonable access to the water while balancing intrusions into the public trust and limiting environmental impacts. The application and evidence presented during the hearing support the assertion that the [defendants'] exercise of their littoral right to wharf out can be achieved while minimizing impacts to coastal resources, wildlife, navigation, and costal sedimentation and erosion patterns. . . . The application and evidence placed in the evidentiary record indicate that the proposed structure will have no impact on the health or welfare of the public or to any fisheries, wildlife or sediments. The record supports the factual findings and conclusions based on those findings that potential environmental impacts

from the proposed project have been sufficiently minimized and that the project is consistent with applicable policies regarding coastal resources management, satisfying the [defendants'] burden in this matter." (Citation omitted.)

Following the hearing officer's issuance of the proposed final decision, the plaintiff filed exceptions, arguing, inter alia, that the hearing officer improperly had declined to grant her intervening party status under § 22a-3a-6 (k) of the regulations and that the proposed final decision violated § 22a-113n (b) by disregarding the commission's recommendation set forth in the public comment letter that the application not be approved. The department heard oral argument on the exceptions on July 24, 2019.

On October 31, 2019, the deputy commissioner issued a final decision, which adopted the findings of fact and conclusions of law set forth in the proposed final decision. The deputy commissioner also addressed the issues raised in the plaintiff's exceptions concerning the plaintiff's intervenor status and the commission's authority to issue recommendations that are binding on the department pursuant to § 22a-113n. Regarding the former, the deputy commissioner found that the plaintiff had declined the hearing officer's invitation to allege additional, specific facts concerning the plaintiff's "legal rights, duties or privileges" sufficient to confer upon her intervenor party status under § 22a-3a-6 (k) of the regulations. The deputy commissioner noted that the plaintiff's "lack of action [stood] in sharp contrast to the action taken" regarding her environmental claims, wherein she submitted a motion for reconsideration asserting new facts supported by an affidavit from an expert witness. The deputy commissioner concluded that, "[h]aving chosen to take no action, the [plaintiff] cannot now" complain that she was denied intervening party status under § 22a-3a-6 (k) of the regulations.

With regard to the plaintiff's exception concerning the commission's authority to make binding recommendations pursuant to § 22a-13n, the deputy commissioner concluded: "A harbor management plan approved by the [department] pursuant to [General Statutes] § 22a-113m may contain recommendations that, unless cause is shown, are binding [on the department], *but it is the approved management plan that must contain or provide such recommendations*. In this case, the recommendations made in the [comment letter]—that the department provide a certain policy statement and that the department consider the policies in the [commission's] management plan—were not required by, and it is not clear even originated in, the [commission's] approved management plan. Moreover, the [commission's] statement that it was unable to 'make a favorable recommendation' on the [defendants'] application not only fails to qualify as a recommendation but, more

significantly, suffers from the same problem previously noted; *the recommendation is simply not contained in the* [*commission's*] *approved management plan.*" (Emphasis added; footnote omitted.) Accordingly, the deputy commissioner affirmed the decision of the hearing officer set forth in the proposed final decision.

On November 27, 2019, the plaintiff appealed from the department's final decision to the Superior Court, pursuant to § 4-183 of the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. In her complaint, the plaintiff alleged that (1) she was classically and statutorily aggrieved by the department's decision, (2) the department's final decision enabled the defendants to evade municipal zoning regulations, (3) the department improperly interpreted § 22a-113n in concluding that the commission's recommendation that the application not be granted was not binding on the department, (4) the final decision violated the structures, dredging and fill act; the tidal wetlands act; and the coastal management act, and (5) the decision was contrary to the department's publicly stated goals.[13]

On February 3, 2020, the intervening plaintiffs filed a motion to intervene in the plaintiff's administrative appeal as parties plaintiff, pursuant to Practice Book § 9-18[14] and General Statutes § 52-107,[15] which the court, *Moukawsher, J.*, granted on October 10, 2020.

On March 6, 2020, the department filed a motion to dismiss two of the plaintiff's claims on administrative appeal, specifically, (1) that the department's final decision violated local zoning ordinances, and (2) that the department improperly concluded that § 22a-113n did not grant the commission the authority to make a recommendation that was binding on the department concerning the defendants' application. In its accompanying memorandum of law, the department argued that the plaintiff did not have standing to pursue those claims because she had been permitted to participate in the defendants' application proceedings only as a statutory intervenor, pursuant to § 22a-19, for the narrow purpose of pursuing environmental claims.[16] In addition, the department argued that, even if the plaintiff was permitted to pursue those claims, she had not demonstrated classical aggrievement because her claimed interests were no different from those of any other member of the public. On March 19, 2020, the defendants also filed a motion to dismiss the plaintiff's nonenvironmental claims, alleging that the plaintiff had failed to demonstrate that she was either classically or statutorily aggrieved by the department's final decision and therefore lacked standing to pursue those claims.

On September 22, 2020, the court issued a memorandum of decision denying both the department's and the defendants' motions to dismiss. In its memorandum of decision, the court determined that the plaintiff had

successfully alleged statutory standing pursuant to § 22a-19 because "[h]er complaint is partly premised on claims of environmental harm, including 'noise and air pollution,' 'degrading visual quality' and violation of three environmental statutes . . . ." In addition, the court concluded that the plaintiff had adequately demonstrated classical aggrievement by showing "a specific personal and arguably legal interest at least plausibly injured by [the final decision]." Specifically, the court pointed to the plaintiff's allegations that she (1) "is an award-winning landscaper whose specially maintained garden views would be damaged by the [dock] structure, the noise and the air pollution . . . [and that the proposed dock] will diminish the value of her property as a place of enjoyment and a showplace for her work, and (2) "that boat exhaust will potentially make her asthma worse." The court concluded, accordingly, that the plaintiff adequately had demonstrated "some kind of standing" for each claim alleged in her appeal.

Each party submitted trial briefs to the court, and, on January 25, 2021, the court heard argument on those briefs. At argument, the plaintiff asserted three claims in support of her position that the final decision of the department granting the defendants' application should be overturned. First, the plaintiff claimed that the department, in the final decision, improperly placed the burden of proof on her to demonstrate "feasible alternatives" to the defendants' proposed dock. Second, the correct burden of proof notwithstanding, the plaintiff argued that the department erred in declining to determine whether feasible alternatives existed to the proposed dock, including a community dock located near the subject property. Third, the plaintiff claimed that the department misinterpreted and, therefore, violated § 22a-113n by failing to regard the commission's recommendation in the public comment letter concerning the defendants' proposed dock "as binding." The intervening plaintiffs also argued that the department misconstrued § 22a-113n in determining that the commission's recommendation that the defendants' application not be approved was not binding on the department.

In response, the defendants renewed their claim that neither the plaintiff nor the intervening plaintiffs had standing to assert the claim concerning the proper interpretation of § 22a-113n. Specifically, the defendants contended that the plaintiff, as a member of the general public, had no personal or legal interest in the commission's authority to make recommendations that are binding on the department under § 22a-113n. With regard to the intervening plaintiffs, the defendants argued that, because the commission never sought to intervene as a party in the administrative proceedings below, the public comment letter was not "evidence in the record" upon which the department could decide the defendants' permit application. Accordingly, the

defendants argued that the intervening plaintiffs did not have a basis upon which to overturn the department's decision.

In addition, both the department and the defendants argued that the Harbor Management Plan did not contain a provision regarding individual dock placements and, therefore, that the commission's recommendation on the defendants' application could not be binding on the department for purposes of § 22a-113n. Moreover, both the defendants and the department contended that the defendants had adequately satisfied their burden of proof in demonstrating that their application complied with the structures, dredging and fill act; the tidal wetlands act; and the coastal management act; and, therefore, were not required to produce additional evidence concerning prudent and feasible alternatives.

On January 27, 2021, the court issued a memorandum of decision rendering judgment in favor of the defendants and the department. The court first determined that both the hearing officer, in the proposed final decision, and the deputy commissioner, in the final decision, applied the correct burdens of proof to both the plaintiff and the defendants. The court then concluded that § 22a-113n did not confer on the commission a broad veto power to make recommendations that are binding on the department concerning permits that affect harbors. Rather, the court concluded that § 22a-113n empowers harbor management commissions to make binding recommendations on issues *already included within an approved harbor management plan*. Stated otherwise, § 22a-113n "says nothing about recommending anything about individual permit applications. Instead, *it is exclusively about recommending for approval the content of a harbor management plan*. It certainly makes sense to make plan recommendations approved by the state binding on the state, but that's as far as it goes." (Emphasis added.) Finally, the court concluded that the department's decision to approve the defendants' application was "supported by substantial evidence in the record, showing appropriate concern for [the plaintiff's] claims and for minimizing environmental impact."[17] Accordingly, the court affirmed the department's final decision and dismissed the plaintiff's administrative appeal. These appeals followed.

I

AC 44551

We begin by addressing the intervening plaintiffs' appeal from the judgment of the Superior Court. On appeal, the intervening plaintiffs claim that the court improperly concluded that § 22a-113n did not grant the commission the statutory authority to make recommendations that are binding on the department concerning individual dock permit applications within its jurisdiction. We disagree.

The following relevant standard of review and legal principles govern our resolution of the intervening plaintiffs' claim. "Judicial review of [an administrative agency's] action is governed by the . . . UAPA . . . and the scope of that review is very restricted. . . . With regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . .

"The substantial evidence rule governs judicial review of administrative fact-finding under [the] UAPA. General Statutes § 4-183 (j) (5) and (6). Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the [plaintiff] to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . .

"Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . .

"Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference." (Citations omitted; internal quotation marks omitted.) *MacDermid, Inc.* v. *Dept. of Environmental Protection*, 257 Conn. 128, 136–37, 778 A.2d 7 (2001). To the extent that the claim raised by the intervening plaintiffs requires us to review the department's construction of § 22a-113n, we are not persuaded that its construction should be afforded deference because it was the product of a "technical case-by-case review . . . that . . . calls for agency expertise." (Internal quotation marks omitted.) *Rudy's Limousine Service, Inc.* v. *Dept. of Transportation*, 78 Conn. App. 80, 94, 826 A.2d 1161 (2003). Rather, our review of the scope and construction of the statute is de novo. See, e.g., *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 150, 12 A.3d 948 (2011) ("because statutory

interpretation is a question of law, our review is de novo" (internal quotation marks omitted)).

A

As a threshold matter, the defendants claim that the intervening plaintiffs' claim is not properly before this court. Specifically, the defendants argue that (1) the commission had no grounds to intervene below because the plaintiff lacked standing to raise the issue concerning the proper interpretation of § 22a-113n on administrative appeal to the Superior Court, and (2) the issue of whether a harbor management commission's recommendation is binding on the department was never raised because the commission never actually made a recommendation concerning the defendants' dock application. We are not persuaded.

The following additional facts and procedural history are relevant to our disposition of the defendants' claim. On November 27, 2019, the plaintiff appealed from the department's final decision to the Superior Court, alleging, inter alia, that the department improperly interpreted § 22a-113n in concluding that the commission's recommendation that the application not be granted was not binding on the department. On February 3, 2020, the intervening plaintiffs filed a motion to intervene in the plaintiff's administrative appeal as parties plaintiff, pursuant to § 52-107 and Practice Book § 9-18. The intervening plaintiffs filed a memorandum of law in support of their motion, in which they argued, inter alia, that they were entitled to intervene as of right due to their substantial interest in the plaintiff's claim concerning the proper interpretation of § 22a-113n.[18] Specifically, the intervening plaintiffs asserted that the court's ruling on the § 22a-113n claim would have a direct and significant impact on their ability to regulate activities concerning harbors and waterways within their jurisdiction, and that the plaintiff did not adequately represent their interest because it was possible for her to prevail on one of her other claims, despite an adverse ruling on the § 22a-113n issue.

On February 11, 2020, the department filed an opposition to the intervening plaintiffs' motion to intervene, arguing that it was procedurally improper. The department contended that, because the intervening plaintiffs were effectively raising issues of error in the department's final decision, and because the intervening plaintiffs could have, but chose not to, participate in the administrative proceeding below as a matter of right, the proper procedural vehicle was to appeal from the department's final decision, rather than attempting to intervene in the plaintiff's administrative appeal.

On October 10, 2020, the court, *Moukawsher, J.*, issued an order granting the intervening plaintiffs' motion to intervene as of right. In its order, the court determined that "[t]his motion is not an attempted

appeal of an administrative decision. . . . Instead, it is a town and its harbor management commission's request to intervene to protect rights they say would be affected by this action. The court doesn't have to decide those rights to let them intervene. It need only observe that the proposed intervenors have colorable claims that a legal ruling in this case might affect their rights in matters related to the town and its harbor. Since this is not a question of an appeal but an intervention, Practice Book [§] 14-6 specifically makes this motion subject to the ordinary rules of civil action intervention. Practice Book [§] 9-18 provides that the court should join parties with 'an interest . . . the judgment will affect . . . .' The parties here have plausibly stated such an interest, and that is good grounds to allow them to intervene."[19]

1

On appeal, the defendants argue that the court improperly granted the intervening plaintiffs' motion to intervene because the plaintiff had no standing to bring the § 22a-113n issue in her administrative appeal in the first instance. As such, the defendants contend that, because the intervening plaintiffs' claim was "derivative" of the plaintiff's claim, and because the plaintiff improperly brought that claim before the Superior Court, the intervening plaintiffs could no longer be considered necessary parties to the plaintiff's administrative appeal sufficient to grant them intervenor status. Stated otherwise, the defendants contend that, because the plaintiff had standing to pursue only her environmental claims pursuant to § 22a-19,[20] the intervening plaintiffs lacked a direct and substantial interest in the outcome of the matter such that their interests could be impaired by the court's decision. We conclude that the intervening plaintiffs' standing to pursue their § 22a-113n claim was not dependent on the plaintiff's standing to bring the same claim.

Our Supreme Court has never considered the issue of whether an intervening party may continue to litigate an action after the claims brought by the original party have been dismissed or the original party has been found to lack standing to pursue the particular claim that affects the interests of the intervening party in the first instance. "In the absence of controlling or persuasive Connecticut authority, we look to the law of other jurisdictions." *Pease* v. *Charlotte Hungerford Hospital*, 325 Conn. 363, 375, 157 A.3d 1125 (2017). Our review of several decisions from other jurisdictions reveals that both federal courts and the courts of other states permit intervening parties to proceed, even when the claims brought by the original party have been dismissed due to lack of subject matter jurisdiction, when (1) there is an independent jurisdictional basis for the intervenor's claim[21] and (2) failure to adjudicate the claim would result in unnecessary delay. See, e.g., *Goto*

v. *District of Columbia Board of Zoning Adjustment*, 423 A.2d 917, 922 (D.C. 1980) ("As a rule, an intervenor joins a preexisting dispute and cannot cure a jurisdictional defect in the original case. Intervention ordinarily will be denied if the intervenor is the only party who fulfills jurisdictional prerequisites. . . . The courts, however, have established a narrow exception to this rule. In order to avoid excessive technicality, expense, and delay, a court in limited circumstances may treat an intervenor's claim as a separate action and decide the matter, while dismissing the original action. A court, accordingly, may invoke this exception only if there is an independent jurisdictional basis for the intervenor's claim and failure to adjudicate the claim would result in unnecessary delay." (Citations omitted.)); *Citibank (South Dakota), N.A.* v. *State*, 599 N.W.2d 402, 405 (S.D. 1999) ("[a]bsent an independent claim, an intervenor cannot keep a lawsuit alive which the original parties wish to end" (internal quotation marks omitted)); *Taylor-West Weber Water Improvement District* v. *Olds*, 224 P.3d 709, 712 (Utah 2009) ("the intervening party may be subject to dismissal if the original party dismisses the suit *and the intervening party has no separate standing*" (emphasis added)); see also *Benavidez* v. *Eu*, 34 F.3d 825, 830 (9th Cir. 1994); *Arkoma Associates* v. *Carden*, 904 F.2d 5, 7 (5th Cir.), cert. denied sub nom. *Magee Drilling Co.* v. *Arkoma Associates*, 498 U.S. 967, 111 S. Ct. 429, 112 L. Ed. 2d 413 (1990); *Horn* v. *Eltra Corp.*, 686 F.2d 439, 440 (6th Cir. 1982); *Atkins* v. *State Board of Education*, 418 F.2d 874, 876 (4th Cir. 1969); *Fuller* v. *Volk*, 351 F.2d 323, 328 (3d Cir. 1965). Stated otherwise, when an intervening party meets those two requirements, a court may treat an intervenor's claim as a separate action and decide the matter while dismissing the original action for lack of subject matter jurisdiction. See *Goto* v. *District of Columbia Board of Zoning Adjustment*, supra, 922.

Even if we assume, without deciding, that the plaintiff lacked standing to bring the § 22a-113n claim, it is clear that the intervening plaintiffs had an independent jurisdictional basis to bring the § 22a-113n claim and that refusing to adjudicate the claim would result in unnecessary delay and a waste of judicial resources.

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . [T]his court has often stated that the question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time. . . . A court does not have subject matter jurisdiction to hear a matter unless the plaintiff has standing to bring the action." (Citation omitted; internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Thompson*, 163 Conn. App. 827,

831, 136 A.3d 1277 (2016).

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury. Similarly, standing exists to attempt to vindicate arguably protected interests. . . . Standing is established by showing that the party claiming it is authorized by statute to bring an action, in other words, statutorily aggrieved, or is classically aggrieved. . . . [Statutory] [s]tanding concerns the question [of] whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. . . .

"The fundamental test for determining [classical] aggrievement encompasses a [well settled] twofold determination: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Footnote omitted; internal quotation marks omitted.) *Handsome, Inc.* v. *Planning & Zoning Commission*, 317 Conn. 515, 525–26, 119 A.3d 541 (2015).

In the present case, it is clear that the intervening plaintiffs have standing to bring a claim concerning the proper interpretation and scope of § 22a-113n. Section 22a-113n (b) provides in relevant part that, "[u]pon adoption of the [harbor management] plan, any recommendation made [by a harbor management commission] pursuant to this section shall be binding on any official of the state, municipality or any other political subdivision when making regulatory decisions or undertaking or sponsoring development affecting the area within the commission's jurisdiction, unless such official shows cause why a different action should be taken." Accordingly, the plain text of § 22a-113n (b) directly implicates the intervening plaintiffs' authority to make recommendations to state and local officials concerning activities affecting harbor areas within its

jurisdiction. As the intervening plaintiffs alleged in their motion to intervene, the "decision in this case will have far-reaching consequences for the [intervening plaintiffs], not only with regard to future dock applications but with regard to any other type of application that is reviewed by the commission, which, ultimately needs a permit from [the department]." This is precisely the sort of concrete and particularized allegation sufficient to raise a " 'colorable claim of injury . . . .' " *Handsome, Inc.* v. *Planning & Zoning Commission*, supra, 317 Conn. 525; see also *Conservation Commission* v. *Red 11, LLC*, 135 Conn. App. 765, 774, 43 A.3d 244 (2012) ("Two of the four criteria for intervention as of right, namely the direct and substantial interest in the subject matter, and the impairment to the movant's interest if he or she is not involved in the case are, in essence, equivalent to the test for aggrievement. . . . Thus, [i]mplicit in the granting of a motion to intervene is the determination that the party has a right which could be adversely affected and that his interest is presently not adequately protected." (Citations omitted; internal quotation marks omitted.)). We conclude, accordingly, that the intervening plaintiffs had an independent jurisdictional basis to bring the § 22a-113n claim.

Second, it is clear that failure to adjudicate the intervening plaintiffs' claim would result in unnecessary delay. Were we to dismiss the intervening plaintiffs' claim on the ground that the original plaintiff lacked standing to bring the § 22a-113n claim, the intervening plaintiffs would then be required to file a petition for a declaratory ruling pursuant to the UAPA. See General Statutes §§ 4-175[22] and 4-176.[23] The intervening plaintiffs would then be left with two options. They could wait for the department to issue a ruling concerning the proper construction of § 22a-113n. Conversely, if the department failed to issue a ruling within sixty days of the filing of the petition, decided not to issue a declaratory ruling, or was deemed as having not decided to issue a declaratory ruling, the intervening plaintiffs could file a declaratory judgment action in the trial court. See General Statutes §§ 4-175 and 4-176. In the present case, both the department and the court already have issued rulings concerning the proper construction of § 22a-113n. To require the intervening plaintiffs to again seek rulings concerning the same issue would be redundant. We conclude, accordingly, that dismissing the intervening plaintiffs' claim would lead to unnecessary delay and be a waste of judicial resources.

2

Having determined in part I A 1 of this opinion that the intervening plaintiffs had standing to raise the § 22a-113n issue in the administrative appeal in the first instance, we briefly address a related reviewability concern raised by the defendants, specifically, whether this

court should refuse to consider the proper construction of § 22a-113n because the issue of whether a harbor management commission's recommendation is binding on the department was never properly raised during the administrative proceedings below. Specifically, the defendants contend that (1) the comment letter that the commission submitted to the department never actually made a recommendation concerning the defendants' application[24] and (2) the comment letter was only a public comment and, therefore, not evidence in the administrative record to be considered when making a determination concerning a proposed dock application. We conclude that the issue concerning the proper construction of § 22a-113n is properly before this court.

The defendants' argument focuses on the commission's role during the administrative proceedings below. In particular, the defendants point to the fact that § 22a-99 entitled the commission to submit written testimony and "appear by right as a party" in the administrative hearings concerning the defendants' application but that the commission elected not to. Accordingly, the defendants contend that the comment letter submitted by the commission to the department was merely a public comment and not evidence in the record that could affect the decision concerning the department's decision regarding the defendants' application.

We agree with the defendants with respect to the nature of the commission's involvement in the underling administrative proceedings. Specifically, the letter sent to the department was only a public comment and not evidence to be considered in determining whether to grant the defendants' application. See Regs., Conn. State Agencies § 22a-3a-6 (t).[25] We conclude, however, that the nature of the intervening plaintiffs' participation in the administrative appeal before the Superior Court substantially differed from their involvement before the department, such that the issue concerning the proper interpretation of § 22a-113n is properly before this court.

As an initial matter, although both the hearing officer and deputy commissioner questioned whether the commission had made a valid recommendation via the comment letter, each assessed the recommendation within the context of § 22a-113n and issued an interpretation concerning the correct construction of § 22a-113n.[26] Specifically, both the hearing officer and the deputy commissioner concluded that a recommendation made by a harbor management commission only has binding effect on the department when the recommendation stems from content or language included within an approved harbor management plan.

The plaintiff challenged the department's ruling concerning the proper scope and interpretation of § 22a-113n in her complaint to the Superior Court. Upon

receiving notice that the § 22a-113n issue was to be adjudicated before the Superior Court, the intervening plaintiffs filed a motion to intervene, alleging, inter alia, that the court's decision regarding the proper interpretation of § 22a-113n would have a "direct and significant impact on their authority and jurisdiction under the [Harbor Management Act, General Statutes § 22a-113k et seq.] and on their future ability to implement the goals and policies of the [p]lan." Stated otherwise, the intervening plaintiffs recognized that the court's construction of § 22a-113n during the administrative appeal could implicate their authority to make binding recommendations as to future permit applications or other matters affecting the harbors within the intervening plaintiffs' jurisdiction.

Finally, as we have explained previously in this opinion, the court considered the issue regarding the proper interpretation of § 22a-113n and issued a decision on the merits, concluding, in its memorandum of decision, that the commission had no authority to make a binding recommendation concerning the defendants' application. In light of the foregoing, we are not persuaded that the issue of whether a harbor management commission's recommendation is binding on the department was not properly raised during the administrative proceedings below.

B

We now turn to the merits of the intervening plaintiffs' claim, which concerns the proper interpretation of § 22a-113n. Specifically, the parties dispute whether § 22a-113n grants to the commission the authority to make recommendations that are binding on the department concerning individual dock placements within the commission's jurisdiction. We conclude that § 22a-113n allows harbor management commissions to make recommendations that are binding on the department only when such recommendations arise from content already included within an approved harbor management plan.

Before turning to the statutory provision at issue in the present appeal, we find it necessary to first review the statutory framework that governs the permitting of individual dock placements, as well as the legislative scheme that regulates the establishment of harbor management commissions and harbor management plans.

In enacting § 22a-361 (d) (1), our legislature delegated to the department the power to "issue a general permit for any minor activity . . . if the commissioner determines that such activity would (A) cause minimal environmental effects when conducted separately, (B) cause only minimal cumulative environmental effects, (C) not be inconsistent with the considerations and the public policy set forth in sections 22a-28 to 22a-35, inclusive, and section 22a-359, as applicable, (D) be

consistent with the policies of the Coastal Management Act, and (E) constitute an acceptable encroachment into public lands and waters. Such activities may include . . . construction of individual residential docks which do not create littoral or riparian conflicts, navigational interference, or adverse impacts to coastal resources, as defined in section 22a-93, which are not located in tidal wetlands, as defined in section 22a-29, and which extend no further than forty feet waterward of mean high water or to a depth of minus four feet mean low water, whichever point is more landward.”

The department’s ability to administer individual dock permits is limited by § 22a-361 (h), which provides that, “[n]otwithstanding any other provision of this section, the [department] shall not issue a certificate or permit to authorize any dock or other structure in an area that was designated as inappropriate or unsuitable for such dock or other structure in a harbor management plan approved and adopted pursuant to section 22a-113m.”

Section 22a-113k et seq. governs the creation of harbor management commissions and the promulgation of harbor management plans. Section 22a-113k (a) provides that “[a]ny municipality having within its limits navigable waters as defined in subsection (b) of section 15-3a may establish by ordinance one or more harbor management commissions or may designate any existing board, commission, council, committee or other agency as a harbor management commission. . . . The ordinance shall designate the area within the territorial limits of the municipality and below the mean high water that shall be within the jurisdiction of a commission and shall set forth the number of members of a commission, their method of selection, terms of office and procedure for filling any vacancy.”

Section 22a-113m empowers harbor management commissions to promulgate harbor management plans “for the most desirable use of the harbor for recreational, commercial, industrial and other purposes.” Importantly, harbor management plans must be submitted for approval by the department and only after department approval may the plan be adopted by ordinance “by the legislative body of each municipality establishing the [harbor management] commission.” General Statutes § 22a-113m.

Section 22a-113n, the provision at issue in the present appeal, is titled “[c]ontent of plan” and delineates certain subject matter that either must be included in a harbor management plan, or subject matter that a harbor management plan may include, pursuant to which harbor management commissions may make binding recommendations to the department. Specifically, § 22a-113n provides: “(a) The plan shall identify existing and potential harbor problems, establish goals and make recommendations for the use, development and

preservation of the harbor. Such recommendations shall identify officials responsible for enforcement of the plan and propose ordinances to implement the plan. The plan shall include, but not be limited to, provisions for the orderly, safe and efficient allocation of the harbor for boating by establishing (1) the location and distribution of seasonal moorings and anchorages, (2) unobstructed access to and around federal navigation channels, anchorage areas and harbor facilities, and (3) space for moorings and anchorages for transient vessels.

"(b) The plan may recommend: (1) Boundaries for development areas to be approved and established by the Commissioner of Energy and Environmental Protection in accordance with the provisions of section 22a-360; (2) designations for channels and boat basins for approval and adoption by the Commissioner of Energy and Environmental Protection in accordance with the provisions of section 22a-340; (3) lines designating the limits of areas for the location of vessels with persons living aboard to be approved and adopted by the director of health in accordance with section 19a-227; (4) pump-out facilities, including the designation of no discharge zones in accordance with Section 312 of the federal Clean Water Act; and (5) regulations for the operation of vessels on the harbor pursuant to the provisions of section 15-136. *Upon adoption of the plan, any recommendation made pursuant to this section shall be binding on any official of the state, municipality or any other political subdivision when making regulatory decisions or undertaking or sponsoring development affecting the area within the commission's jurisdiction, unless such official shows cause why a different action should be taken.*" (Emphasis added.)

It is well established that "[t]he process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . Furthermore, [t]he legislature is always presumed to have created a harmonious and consistent body of law . . . [so that] [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Nutmeg State Crematorium, LLC* v. *Dept. of Energy & Environmental*

*Protection*, 210 Conn. App. 384, 390–91, 270 A.3d 158, cert. denied, 343 Conn. 906, 272 A.3d 1126 (2022).

On appeal, the intervening plaintiffs focus on the final sentence of § 22a-113n (b), which provides, "[u]pon adoption of the plan, any recommendation made pursuant to this section shall be binding on any official of the state, municipality or any other political subdivision when making regulatory decisions or undertaking or sponsoring development affecting the area within the commission's jurisdiction, unless such official shows cause why a different action should be taken." The intervening plaintiffs contend that this clause delegates to the commission the power to make recommendations that are binding on the department regarding individual dock permits. Specifically, the intervening plaintiffs point to the phrase "regulatory decisions," arguing that, because the department's review and permitting of individual dock applications is a regulatory decision made by a state official that affects harbors and waterways within the commission's jurisdiction, "any recommendation [made by the commission] concerning regulatory decisions by a state official . . . are binding on that official, unless the official can show cause why a different action should be taken."

By contrast, the department and the defendants argue that the plain language of § 22a-113n (b) only permits harbor management commissions to make binding recommendations *concerning content specifically found within a preapproved harbor management plan.* Because the town's harbor management plan does not contain any provisions concerning individual dock placements, the department and the defendants contend, § 22a-113n does not provide the commission with the authority to make a binding recommendation concerning the defendants' application. We agree with the department and the defendants.

As an initial matter, § 22a-113n is titled "[c]ontent of *plan*" and makes continued reference to "the plan" throughout the statutory text. (Emphasis added.) Indeed, subsection (a) begins, "[t]*he plan* shall identify," and subsection (b) states, "[t]*he plan* may recommend." (Emphasis added.) General Statutes § 22a-113n. In addition, the final sentence of § 22a-113n (b), on which the intervening plaintiffs rely, begins "[u]pon *adoption of the plan*, any recommendation *made pursuant to this section* shall be binding on any official of the state . . . ." (Emphasis added.) General Statutes § 22a-113n (b). Accordingly, we construe the repeated reference in § 22a-113n to an approved harbor management plan to mean that any binding recommendation promulgated by a harbor management commission, including recommendations concerning regulatory decisions, must refer to content already contained within an approved harbor management plan. Indeed, the plain text of § 22a-113n (b) limits binding recom-

mendations to recommendations "made pursuant to this section." Stated otherwise, binding recommendations must be made pursuant to the content of the approved harbor management plan.

Had the legislature intended to empower harbor management commissions with the authority to make recommendations that are binding on the department regarding subject matter not contained within an approved harbor management plan, as the intervening plaintiffs suggest, it would have done so explicitly. Specifically, the legislature would have stated that the harbor management commission, irrespective of any plan, is charged with identifying existing and potential harbor problems, as well as making recommendations pursuant to the five enumerated criteria in § 22a-113n (b). Indeed, that is precisely what the legislature provided for in General Statutes § 22a-113p, which provides in relevant part that "[t]*he commission may review and make recommendations, consistent with the plan*, on any proposal affecting the real property on, in or contiguous to the harbor that is received by any zoning commission, planning commission or combined planning and zoning commission, zoning board of appeals, historic district commissions, flood and erosion control board, harbor improvement agency, port authority, redevelopment agency, shellfish commission, sewer commission, water pollution control authority or special district with zoning or other land use authority." (Emphasis added.) The legislature, therefore, intended to empower harbor management commissions to make recommendations to local agencies concerning proposals "affecting the real property on, in or contiguous to the harbor," so long as such recommendations are *consistent* with the harbor management plan. By contrast, as the plain text of § 22a-113n makes clear, any recommendation binding on the department, or any other state actor, must emanate explicitly from content included within an approved harbor management plan.

The relationship of § 22a-113n to other statutes within the broader regulatory framework also supports our construction. As stated previously in this opinion, the department's power to review and issue permits for individual dock applications is limited by § 22a-361 (h), which provides, "[n]otwithstanding any other provision of this section, the [department] shall not issue a certificate or permit to authorize any dock or other structure in an area that was *designated as inappropriate or unsuitable for such dock or other structure in a harbor management plan approved and adopted pursuant to section 22a-113m*." (Emphasis added.) Although § 22a-361 (h) constrains the department's authority to issue individual dock permits, the language plainly states that any limitation must derive from content within approved harbor management plans designating an area as inappropriate or unsuitable for such a structure. Reading § 22a-113n together with § 22a-361 (h), it

becomes clear that the legislature did not intend to empower harbor management commissions with the authority to make binding, ad hoc recommendations on individual dock placements, unless such recommendations are provided for within a preexisting, approved harbor management plan.

Finally, § 22a-113m, which describes the process by which the department approves a harbor management plan, lends further support to our conclusion. Indeed, § 22a-113m provides that a harbor management plan cannot "be adopted by ordinance by the legislative body of each municipality" until it is approved by the department. Likewise, § 22a-113m provides that harbor management plans are subject to the department's annual review, ensuring that the department maintains continuous oversight over the content and execution of the plan. In light of these procedural requirements, it would make little sense for the legislature to have intended that harbor management commissions are empowered to make binding recommendations concerning subject matter not included in an approved harbor management plan. The more logical reading, as the court aptly determined, is that § 22a-113n bestows harbor management commissions with the authority to make "plan recommendations approved by the state binding on the state . . . ." Accordingly, § 22a-113n (b) is an enforcement mechanism for recommendations made pursuant to harbor management plans that already have received department approval as described in § 22a-113m. Section 22a-113n (b), therefore, does not provide the commission with a sweeping veto power over the department's dock permitting authority but, rather, bars the department from making arbitrary regulatory decisions within the commission's jurisdiction, or from revoking the commission's authority to regulate preapproved activities, without a good cause showing as to "why a different action should be taken."

The plain language of § 22a-113n notwithstanding, the intervening plaintiffs contend that our construction would lead to absurd or unworkable results. Specifically, they argue that requiring harbor management commissions to include provisions in harbor management plans concerning individual dock placements would necessitate that those commissions "[anticipate and address] . . . every possible scenario for every potential permit application that could be filed with [the department] for regulatory approval . . . ." The legislature, however, has already spoken on this issue by promulgating § 22a-361 (h), which provides in relevant part that the department "shall not issue a certificate or permit to authorize any dock or other structure in an *area that was designated as inappropriate or unsuitable for such dock or other structure in a harbor management plan approved and adopted pursuant to section 22a-113m.*" (Emphasis added.) The plain text of § 22a-361 (h) makes clear that the legislature

intended that harbor management commissions identify within harbor management plans areas that they consider to be inappropriate or unsuitable for dock placement. Accordingly, harbor management commissions are free to set forth criteria concerning individual dock placement that become binding on the department once the plan is approved, unless the department can show good cause as to why such criteria should not control. Simply because harbor management commissions are not given a broad veto power over individual dock permits, when such dock permits are not within an area deemed inappropriate or unsuitable, does not render the plain text of § 22a-113n unworkable. See *Rivers* v. *New Britain*, 288 Conn. 1, 17, 950 A.2d 1247 (2008) (defining "unworkable" as "not capable of being put into practice successfully" (internal quotation marks omitted)).[27]

We therefore conclude that the plain text of § 22a-113n, as well as its relationship to other statutes, authorizes harbor management commissions to make recommendations that are binding on the department only when such recommendations arise from content already included in an approved harbor management plan. Because the Greenwich Harbor Management Plan does not discuss the permitting or placement of individual docks, the intervening plaintiffs' claim must fail.

## II

## AC 44547

We now turn to the plaintiff's claims on appeal, which concern the court's conclusion that the department and the hearing officer ruled correctly on the plaintiff's environmental claims during the administrative proceedings below.[28] The plaintiff claims that the court improperly concluded that (1) under CEPA, the department applied the correct burdens of proof to both her claims and those of the defendants during the administrative proceedings below and (2) the department's determination, under the tidal wetlands act, that there were no feasible and prudent alternatives to the defendants' dock application was supported by substantial evidence. We are not persuaded.

## A

The plaintiff first claims that, under CEPA, the deputy commissioner and the hearing officer applied improper burdens of proof as to her and the defendants in the administrative proceedings below. Specifically, the plaintiff contends that (1) the hearing officer's conclusion, which subsequently was affirmed by the deputy commissioner, that the plaintiff lacked standing as a party intervenor under § 22a-3a-6 (k) (1) (B) of the regulations caused the hearing officer to incorrectly apply to the plaintiff the burden of proof set forth in § 22a-19 concerning environmental intervenors, and (2) the hearing officer and the deputy commissioner

improperly held the plaintiff to a higher burden of proof than is required under § 22a-19 and wrongly concluded that the defendants were not required to demonstrate the absence of feasible alternatives to their proposed dock. We disagree with each of the plaintiff's arguments and will address them in turn.

1

As an initial matter, the plaintiff contends that the hearing officer and the department erred in concluding that she had failed to demonstrate standing as an intervening party, pursuant to § 22a-3a-6 (k) (1) (B) of the regulations, and, therefore, improperly confined her participation in the administrative proceedings to that of an environmental intervenor under § 22a-19. She argues that the court's determination that she had properly alleged classical aggrievement during the administrative appeal "reversed" the hearing officer's determination that she had standing to allege only environmental claims under § 22a-19 during the administrative proceedings below. Accordingly, the plaintiff argues that the hearing officer applied to her the incorrect burden of proof because "she should not have been required to prove anything under § 22a-19 because she should not have been required to resort to the statute as a basis for her intervention."

We conclude that the plaintiff never properly raised the issue concerning the hearing officer's alleged improper refusal to grant her intervening party status pursuant to § 22a-3a-6 (k) (1) (B) of the regulations on administrative appeal before the Superior Court. Rather, the plaintiff's argument on appeal confuses the court's determination that she had demonstrated both classical and statutory aggrievement sufficient to invoke the subject matter jurisdiction of the court with the hearing officer's determination that she had failed to demonstrate standing as an intervening party pursuant to § 22a-3a-6 (k) (1). See *Mayer* v. *Historic District Commission*, 325 Conn. 765, 772, 160 A.3d 333 (2017) ("[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal. . . . [I]n order to have standing to bring an administrative appeal, a person must be aggrieved. . . . Two broad yet distinct categories of aggrievement exist, classical and statutory." (Internal quotation marks omitted.)). The plaintiff never claimed during the administrative appeal that the hearing officer improperly concluded that she had failed to properly demonstrate intervening party status under § 22a-3a-6 (k) (1) (B). Moreover, the plaintiff pleaded different factual allegations in her complaint to the Superior Court than she did in her motion to intervene before the hearing officer during the administrative proceedings. It is well settled that "[o]ur appellate courts, as a general practice, will not review claims made for the first time on appeal. . . . This rule applies to

appeals from administrative proceedings . . . .'' (Citation omitted; internal quotation marks omitted.) *O'Rourke* v. *Dept. of Labor*, 210 Conn. App. 836, 853, 271 A.3d 700 (2022). Accordingly, we decline to review the plaintiff's claim that the court's ruling as to her standing overruled, sub silentio, the hearing officer's determination that she had failed to allege facts sufficient to confer intervening party status on her pursuant to § 22a-3a-6 (k) (1) (B).

2

The plaintiff next claims that the hearing officer and the deputy commissioner applied incorrect burdens of proof to the plaintiff and to the defendants in the administrative proceedings below. Specifically, the plaintiff contends that the hearing officer and the deputy commissioner held her to a higher standard of proof than was required by CEPA and improperly concluded that the defendants did not have the burden of proving the absence of alternative feasible designs. We disagree.

The following additional facts and procedural history are relevant to our resolution of the plaintiff's claim. In the proposed final decision, the hearing officer clarified that both the plaintiff, as an environmental intervenor pursuant to § 22a-19, and the defendants, as applicants for an individual dock permit pursuant to applicable portions of the coastal management act; the structures, dredging and fill act; and the tidal wetlands act, carried separate burdens of proof.

Regarding the plaintiff's burden, the hearing officer clarified that, as an intervening party pursuant to § 22a-19, the plaintiff was required to produce evidence that pollution, impairment, or destruction of the public trust she complained of was reasonably likely to occur and that if the pollution, impairment or destruction did occur, it would be unreasonable. Applying this framework, the hearing officer made the following conclusions. First, the hearing officer determined that, because the proposed dock was "in character with a heavily developed residential shoreline with a large number of residential docks," the plaintiff had failed to demonstrate that the dock would have a negative visual impact on the area of Greenwich Cove where the dock would be located. Second, the hearing officer, crediting the expert testimony offered by both the defendants and the department, concluded that pedestrian access to the proposed dock was unlikely "to result in the unreasonable destruction of that coastal resource." Third, the hearing officer determined that the plaintiff had failed to offer sufficient evidence supporting her allegation that using a motorboat near the proposed dock would negatively impact the tidal wetlands.[29] The hearing officer concluded, accordingly, that the plaintiff had failed to meet her burden of proof.

The hearing officer then addressed the defendants'

burden of proof concerning the dock application. The hearing officer clarified that the defendants carried the burden of proving, by a preponderance of the evidence, that their application satisfied statutory and regulatory criteria set forth in the coastal management act; in the structures, dredging and fill act; in the tidal wetlands act; and in §§ 22a-30-1 through 22a-30-17 of the Regulations of Connecticut State Agencies. Citing the expert testimony submitted in support of the defendants' application, the hearing officer concluded: "[T]he construction of the proposed structure, will provide the [defendants] with reasonable access to the water while balancing intrusions into the public trust and limiting environmental impacts. The application and evidence presented during the hearing support the assertion that the [defendants'] exercise of their littoral right to wharf out can be achieved while minimizing impacts to coastal resources, wildlife, navigation, and coastal sedimentation and erosion patterns. . . . The application and evidence placed in the evidentiary record indicate that the proposed structure will have no impact on the health or welfare of the public or to any fisheries, wildlife or sediments. The record supports the factual findings and conclusions based on those findings that potential environmental impacts from the proposed project have been sufficiently minimized and that the project is consistent with applicable policies regarding coastal resources management, satisfying the [defendants'] burden in this matter."

In her administrative appeal before the Superior Court, the plaintiff claimed that the hearing officer imposed on her an incorrect burden of proof. Specifically, the plaintiff alleged that "[t]he [department] and the hearing officer . . . confused the requirements of sufficiently pleading a basis for statutory standing under § 22a-19 with the requirements of proof under [General Statutes §§] 22a-16 and 22a-17 of CEPA." The plaintiff also alleged that the hearing officer improperly concluded that the defendants had met their burden of proof concerning the dock application and had "effectively shifted" that burden to the plaintiff.

At oral argument before the Superior Court, the plaintiff conceded that there were two different burdens of proof, one for the defendants as applicants, and one for the plaintiff as an environmental intervenor. The plaintiff alleged, however, that the department, in the final decision, improperly placed the burden on her to prove that there was a lack of feasible alternatives to the defendants' proposed dock, when it should have placed the burden on the defendants to prove the lack of feasible alternatives.

In its memorandum of decision, the court rejected the plaintiff's arguments, concluding instead that the hearing officer properly had applied the correct burdens of proof to the parties. With regard to the feasible alter-

natives argument, the court clarified that "[f]easible alternatives are part of the process in two different ways. Under . . . § 22a-19 (b), if [the plaintiff] had proved her pollution claim [the department] would have had to deny the permit if there was a 'feasible and prudent alternative.' With [the plaintiff] not having proved her pollution claim, to grant the permit, [§ 22a-30-10 of the Regulations of Connecticut State Agencies] still required [the department] to find [that] there was 'no alternative for accomplishing the applicant's objectives which is technically feasible and would further minimize adverse impacts.' . . . Nowhere did the hearing officer suggest that [the plaintiff] bore any burden in this regard, and nowhere did the [department] in the final decision affirming the hearing officer suggest anything different.' " The court concluded, accordingly, that the department and the hearing officer did not misapply the competing burdens of proof in the proposed final decision or in the final decision.

On appeal, the plaintiff makes two interrelated arguments in support of her claim that the court improperly concluded that the department and the hearing officer applied the correct burdens of proof during the administrative hearings below. First, she contends that both the department and the hearing officer "confused the requirements of sufficiently pleading a basis for statutory standing under [§] 22a-19 with the requirements of proof required in a direct environmental action under [§§ 22a-16 and 22a-17]" of CEPA. In essence, the plaintiff argues that environmental intervenors, acting pursuant to § 22a-19, carry a lower evidentiary burden to demonstrate environmental harm than do litigants bringing a direct environmental action under §§ 22a-16 and 22a-17, even after the intervenor has been made party to the litigation.[30] Second, the plaintiff contends that the court improperly concluded that the defendants were required to produce evidence of the absence of feasible alternatives only if the plaintiff made a prima facie showing of pollution or environmental harm under § 22a-19. We are not persuaded.

The plaintiff's first argument is premised on a misunderstanding of the law concerning the burden of proof required to demonstrate standing as an intervening party, pursuant to § 22a-19 (a), and the burden of proof required of intervening parties, already joined in the litigation, to produce evidence of unreasonable pollution that requires the department to consider feasible alternatives under § 22a-19 (b). Because the plaintiff's argument presents a question of statutory interpretation concerning the burdens of proof required of intervening parties under § 22a-19, our review is plenary. See, e.g., *Waterbury* v. *Washington*, 260 Conn. 506, 546–47, 800 A.2d 1102 (2002).

As an initial matter, § 22a-19 (a) sets forth the plead-

ing requirements for parties seeking to intervene on environmental grounds in administrative or licensing proceedings. In order to demonstrate standing under § 22a-19 and therefore be made a party to the relevant proceeding, a party must file a verified pleading that contains "specific factual allegations setting forth the nature of the alleged unreasonable pollution, impairment or destruction of the public trust in air, water or other natural resources of the state and should be sufficient to allow the reviewing authority to determine from the verified pleading whether the intervention implicates an issue within the reviewing authority's jurisdiction." General Statutes § 22a-19 (a) (2); see also *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 164–65, 788 A.2d 1158 (2002) ("[A] petition for intervention filed under § 22a-19 must contain specific factual allegations setting forth the environmental issue that the intervenor intends to raise. The facts contained therein should be sufficient to allow the agency to determine from the face of the petition whether the intervention implicates an issue within the agency's jurisdiction.").

By contrast, § 22a-19 (b) delineates when the agency overseeing the administrative proceeding must consider feasible alternatives after the intervenor has already satisfied the threshold standing requirement set forth in § 22a-19 (a) and has been made party to the proceedings. Specifically, § 22a-19 (b) provides that, "[i]n any administrative, licensing or other proceeding, the agency shall *consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state* and no conduct shall be authorized or approved *which does, or is reasonably likely to, have such effect* as long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare." (Emphasis added.)

Our Supreme Court previously has interpreted § 22a-19 (b) to require that agencies overseeing the administrative proceedings consider feasible alternatives only after they first determine that the defendant's conduct is, or is likely to, cause an unreasonable environmental impact. In *Paige* v. *Town Plan & Zoning Commission*, 235 Conn. 448, 668 A.2d 340 (1995), our Supreme Court determined that intervening plaintiffs acting pursuant to § 22a-19 did not need to produce evidence demonstrating that the "natural resources" they sought to protect had economic value. Id., 461–62. In so holding, our Supreme Court considered the argument that abandoning the economic value test would lead to agencies being required, under § 22a-19 (b), to consider feasible alternatives in every proceeding in which a party intervened pursuant to § 22a-19 (b). Id., 462. Our Supreme Court rejected that argument, concluding that, "[b]y its plain terms . . . § 22a-19 (b) requires the consider-

ation of alternative plans *only* where the commission first determines that it is *reasonably likely* that the project would cause *unreasonable pollution, impairment or destruction of the public trust* in the natural resource at issue. . . . In view of the factors and standards that govern the determination in each case, any fear that a broad definition will cause alternative plans to be required in virtually every case is plainly unwarranted." (Citations omitted; emphasis altered; internal quotation marks omitted.) Id., 462–63.

This court later applied our Supreme Court's construction of § 22a-19 (b) in *Evans* v. *Plan & Zoning Commission*, 73 Conn. App. 647, 808 A.2d 1151 (2002). In *Evans*, the plaintiffs intervened, pursuant to § 22a-19 (a), in an application proceeding before the Plan and Zoning Commission of the Town of Glastonbury for subdivision-resubdivision approval and a rear lot special permit. Id., 649. On appeal to this court, the plaintiffs claimed that "the commission failed to follow the statutory requirements of § 22a-19 by not considering feasible and prudent alternatives to the proposed application." Id., 656. In response, the defendants argued that § 22a-19 requires the consideration of alternatives only if the proposed project involves conduct reasonably likely to cause unreasonable impairment to a natural resource. Id., 657. This court agreed with the defendants, concluding that, " [b]y its plain terms . . . § 22a-19 (b) requires the consideration of alternative plans *only* where the commission first determines that it is *reasonably likely* that the project would cause *unreasonable pollution, impairment or destruction* of the *public trust* in the natural resource at issue. . . . [O]nce the commission *made no finding of unreasonable impairment of natural resources, it no longer had an obligation to consider alternative plans*.") (Citations omitted; emphasis altered.) Id., 657–58.

Both our Supreme Court's decision in *Paige* and this court's decision in *Evans* demonstrate that properly alleging statutory standing under § 22a-19 (a) to be made party to an administrative proceeding and producing evidence of unreasonable environmental impairment sufficient to require that the agency consider feasible alternatives under § 22a-19 (b), are governed by two separate burdens of proof. Indeed, § 22a-19 (a) requires that an intervening plaintiff set forth only a " 'colorable claim' " of unreasonable pollution, impairment or destruction of the environment, sufficient to survive a motion to dismiss. *Finley* v. *Inland Wetlands Commission*, 289 Conn. 12, 35, 959 A.2d 569 (2008). An intervening plaintiff " 'need not prove his case' " in order to successfully plead intervenor standing pursuant to § 22a-19 (a). Id. By contrast, the decisions in *Paige* and *Evans* make clear that an agency's consideration of feasible alternatives, pursuant to § 22a-19 (b), is triggered only by the *agency's preliminary finding* of an unreasonable impairment of natural resources. See

*Paige* v. *Town Plan & Zoning Commission*, supra, 235 Conn. 462–63; *Evans* v. *Plan & Zoning Commission*, supra, 73 Conn. App. 657. It follows that such a finding must be predicated on evidence produced by the intervening party alleging an unreasonable environmental impairment.[31] See *Reycling, Inc.* v. *Commissioner of Energy & Environmental Protection*, 179 Conn. App. 127, 141, 178 A.3d 1043 (2018) ("The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. . . . An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.)); see also *Estate of Machowski* v. *Inland Wetlands Commission*, 137 Conn. App. 830, 836, 49 A.3d 1080 ("This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . Evidence of general environmental impacts, mere speculation, or general concerns do not qualify as substantial evidence." (Internal quotation marks omitted.)), cert. denied, 307 Conn. 921, 54 A.3d 182 (2012).[32]

Moreover, we note that the structure of § 22a-19 also supports our conclusion that environmental intervenors must do more than establish statutory standing in order to trigger the agency's consideration of feasible alternatives under § 22a-19 (b). As stated previously, § 22a-19 (a) details the pleading requirements for an intervening party to successfully allege statutory standing. By contrast, § 22a-19 (b) details when the administrative agency presiding over the proceeding must consider feasible alternatives. Under the plaintiff's interpretation, the requirements necessary to demonstrate statutory standing and the burden of proof required to trigger consideration of feasible alternatives would collapse into one another. In interpreting § 22a-19, we are mindful that "[i]t is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.) *Connecticut Podiatric Medical Assn.* v. *Health Net of Connecticut, Inc.*, 302 Conn. 464, 474, 28 A.3d 958 (2011). If demonstrating statutory standing under § 22a-19 was all that was required to trigger the agency's consideration of feasible alternatives, § 22a-19 (b) would be rendered superfluous. We decline to construe § 22a-19 in such a manner.[33]

Second, the plaintiff argues that the court improperly concluded that the defendants were required to produce the absence of feasible alternatives only if the plaintiff made a prima facie showing of pollution or environmental harm under § 22a-19. We conclude, in light of our determination that an agency may consider feasible alternatives under § 22a-19 (b) only after it first determines that the defendant's proposed action causes, or is reasonably likely to cause, unreasonable environmental impairment, that the plaintiff's argument must fail. Indeed, both the hearing officer and the deputy commissioner concluded that the plaintiff had failed to set forth substantial evidence demonstrating that the defendants' proposed dock would, or was reasonably likely to, result in unreasonable environmental harm. Accordingly, there was no requirement for the defendants to produce, or for the department to consider, feasible alternatives. Cf. *Paige* v. *Town Plan & Zoning Commission*, supra, 235 Conn. 462–63; *Evans* v. *Plan & Zoning Commission*, supra, 73 Conn. App. 657.

B

The plaintiff's final claim is that the court improperly concluded that the department's determination, pursuant to the tidal wetlands act, that there were no feasible and prudent alternatives to the defendants' proposed structure was supported by substantial evidence. We disagree.

"[T]he substantial evidence rule governs judicial review of administrative fact-finding under [the UAPA]. General Statutes § 4-183 (j) (5) and (6). Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . . The burden is on the [plaintiff] to demonstrate that the [department's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . .

"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substan-

tial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and [provides] a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence . . . has said that it is something less than the weight of the evidence, and [that] the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . [T]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . As with any administrative appeal, our role is not to reexamine the evidence presented to the [agency] or to substitute our judgment for the agency's expertise, but, rather, to determine whether there was substantial evidence to support its conclusions. . . .

"In reviewing decisions made by an administrative agency, a reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial . . . ." (Citations omitted; internal quotation marks omitted.) *Lawrence* v. *Dept. of Energy & Environmental Protection*, 178 Conn. App. 615, 637–38, 176 A.3d 608 (2017).

In contrast to CEPA, which requires that the department consider feasible alternatives only when it first finds that the defendants' proposed structure was reasonably likely to result in unreasonable environmental impact; see part II A 1 of this opinion; see also *Paige* v. *Town Plan & Zoning Commission*, supra, 235 Conn. 462–63; *Evans* v. *Plan & Zoning Commission*, supra, 73 Conn. App. 657; the consideration of feasible alternatives under the tidal wetlands act and its related regulations is a requirement independent of any finding of impairment or pollution. Section 22a-30-10 (b) of the regulations provides, "[i]n order to make a determination that a proposed activity will preserve the wetlands of the state and not lead to their despoliation and destruction the commissioner shall, as applicable, find that: (1) There is no alternative for accomplishing the applicant's objectives which is technically feasible and would further minimize adverse impacts . . . ."

On the basis of our review of the entire record, we conclude that there was substantial evidence to support the hearing officer's finding concerning the lack of feasible alternatives to the proposed structure. In determining that there were no prudent and feasible alternatives to the proposed structure, the hearing officer noted that department staff considered and rejected fourteen alternative designs to the structure before ultimately

concluding that the approved structure would have the least adverse impact on the surrounding tidal wetlands. See *Connecticut Building Wrecking Co.* v. *Carothers*, 218 Conn. 580, 593, 590 A.2d 447 (1991) ("[a]n agency composed of [experts] is entitled . . . to rely on its own expertise within the area of its professional competence" (internal quotation marks omitted)).

In addition, the hearing officer relied on the expert testimony of Jacobson, the department's permit analyst, and Warren, an expert in coastal resources and tidal wetlands ecology, both of whom testified that the proposed structure would have minimal impact on the tidal wetlands. See *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, 269 Conn. 57, 78, 848 A.2d 395 (2004) ("Determining what constitutes an adverse impact on a wetland is a technically complex issue. . . . Inland wetlands agencies commonly rely on expert testimony in making such a finding." (Citation omitted.)). Specifically, Jacobson testified that the proposed structure would comply with the requirements set forth in § 22a-28, namely, that the proposed structure would not alter the surrounding ecosystem or adversely affect public health and welfare. Likewise, Warren testified that the defendants' proposed activities, such as operating a motorboat near the proposed structure and walking through the high marsh to access the proposed structure, would not have an appreciable impact on the tidal wetlands.

Although the plaintiff also presented expert testimony in support of her contention that the proposed dock would negatively impact the surrounding tidal wetlands, the hearing officer was well within his discretion to credit the department's and the defendants' experts over the plaintiff's expert. See, e.g., *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 830, 955 A.2d 15 (2008) ("It is well established that it is the exclusive province of the trier of fact to make determinations of credibility, crediting some, all, or none of a given witness' testimony. . . . [A]n administrative agency is not required to believe any witness, even an expert." (Citation omitted; internal quotation marks omitted.)). Moreover, it is well settled that, even when there is conflicting expert testimony, "evidence is sufficient to sustain an agency finding if it affords a substantial basis in fact from which the fact in issue can be reasonably inferred. . . . [T]he possibility of drawing two inconsistent conclusions from evidence does not prevent [a determination] from being supported by substantial evidence." (Internal quotation marks omitted.) *Samperi* v. *Inland Wetlands Agency*, 226 Conn. 579, 588, 628 A.2d 1286 (1993). Accordingly, we conclude that the department's determination that there were no feasible alternatives to the proposed structure was supported by substantial evidence.[34]

The plaintiff further argues that the proposed struc-

ture is an improper exercise of the defendants' littoral rights. In particular, the plaintiff contends that the proposed structure must "[extend] from [the] upland," rather than begin past the median high water line, existing "entirely upon land of the state held in trust for the public, without any contact whatsoever with any property owned by [the defendants]."

Littoral rights are "the rights that shoreline owners possess to make exclusive use of the land lying seaward of the mean high water mark. . . . [O]wners of . . . upland [appurtenant to bodies of water] have the exclusive, yet qualified, right and privilege to . . . wharf out from the owner's land in a manner that does not interfere with free navigation." (Citation omitted; internal quotation marks omitted.) *Caminis* v. *Troy*, 300 Conn. 297, 299 n.2, 12 A.3d 984 (2011); see also *Rochester* v. *Barney*, 117 Conn. 462, 468, 169 A. 45 (1933) ("The owner of the adjoining upland has certain exclusive yet qualified rights and privileges in the waters and submerged land adjoining his upland. He has the exclusive privilege of wharfing out and erecting piers over and upon such soil and of using it for any purpose which does not interfere with navigation, and he may convey these privileges separately from the adjoining land. He also has the right of accretion, and generally of reclamation, and the right of access by water to and from his upland.").

Although the plaintiff argues that the right to wharf permits applicants to erect only structures that "connect" to the upland, she has failed to produce any authority standing for that proposition. Indeed, our Supreme Court previously has rejected the notion that the "right of wharfage . . . is an inseparable incident or accessory to the upland, in such a sense that it inheres in, and is a part of, such upland itself," concluding instead that the right to wharf, like other property rights, is freely alienable. *Simons* v. *French*, 25 Conn. 346, 352 (1856). Considering the plain language in *Simons* that the right to wharf is not "part of" the upland itself, along with our Supreme Court's conclusion that the owner of the upland property is free to transfer the right to wharf to another party, it would make little sense to require that any structure providing access to navigable waters must extend from the upland or connect to a structure extending from the upland. Rather, as we previously have stated, an applicant for a dock permit bears the burden of demonstrating, by a preponderance of the evidence, that the proposed structure complies with the relevant statutory schemes, namely, the tidal wetlands act; the structures, dredging and fill act; and the coastal management act. Accordingly, the hearing officer correctly determined that, "[w]hile the proposed dock does not match that more typical design, there is no requirement of statute or common law requiring that it must. The [defendants have] the right to use the littoral area to access the

water, provided that, when balanced with the policies in the coastal management act, the exercise of access is reasonable, and other relevant statutes and regulations are satisfied.'' Because the hearing officer's determination that the defendants' application satisfied the applicable regulatory and statutory criteria is supported by substantial evidence in the record, we conclude that the plaintiff's claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the Department of Energy and Environmental Protection is the named defendant in this action, for convenience, we refer to it as the department and to the Maraches as the defendants.

[2] Specifically, the proposed structure contained the following features: (1) a five foot by twenty foot floating dock, secured by two float restraint piles, and equipped with floating steps; (2) a four foot by twenty-six foot timber pier, supported by six timber piles, with open-grate decking and steel cable handrails; (3) a three foot wide by twenty-three foot long ramp extending to the floating dock; and (4) a fifteen foot by fifteen foot boat lift with a support stringer and two piles.

[3] "The 'mean high water [line]' is the average of all high tide elevations based on [a nineteen] year series of tide observations . . . . The mean high water [line] delineates the seaward extent of private ownership of upland property as well as the limits of municipal jurisdiction for regulating upland development projects; the [s]tate of Connecticut holds title as trustee to the lands waterward of the mean high water [line] . . . ." (Internal quotation marks omitted.) *Rapoport* v. *Zoning Board of Appeals*, 301 Conn. 22, 25 n.4, 19 A.3d 622 (2011).

[4] The defendants had filed an earlier application (first application) with the department on August 25, 2014. On December 23, 2014, the department responded to the defendants' application, informing the defendants that local zoning regulations would not permit the dock as proposed. Specifically, the department explained that "we have concluded it would be inadvisable to allow you to revise the pending application to propose a dock entirely waterward of mean high water. In our experience, structures designed to avoid upland land use restrictions, whether originating in zoning regulations or conservation easements, raise a number of policy issues, and could set a precedent encouraging proliferation of docks in inappropriate locations. In order to thoroughly evaluate such issues, we believe that the best course of action would be for you to withdraw the pending application, and reapply at a later date. The new application could then include a written confirmation from the appropriate [town] official indicating that there are no municipal issues with the dock being installed at mean high water, as well as revised consultations with municipal commissions and [department] resource agencies." The defendants subsequently withdrew the first application and submitted the present application in accordance with the department's proposed structural designs.

[5] Between July 31, 2015, and March 6, 2018, when the department issued the tentative determination to approve the application, the department made three additional requests for information. The defendants responded to each supplemental request. Likewise, in response to comments from department staff, the defendants modified the initial design of their proposed dock, replacing timber steps with an access ladder at the landward end of the pier.

Consultants for the defendants prepared many alternative dock designs, which were rejected as having a greater environmental impact than the final proposed dock. Department staff evaluated and rejected fourteen alternative dock designs.

[6] General Statutes § 22a-32 is titled "Regulated activity permit. Application. Hearing. Waiver of hearing" and provides in relevant part: "The commissioner or the commissioner's duly designated hearing officer shall hold a public hearing on such application, provided, whenever the commissioner determines that the regulated activity for which a permit is sought is not likely to have a significant impact on the wetland, the commissioner may waive the requirement for public hearing after publishing notice, in a newspaper having general circulation in each town wherever the proposed work or any part thereof is located, of the commissioner's intent to waive said requirement and of the commissioner's tentative decision regarding the

application, *except that the commissioner shall hold a hearing on such application upon request of the applicant or upon receipt of a petition, signed by at least twenty-five persons, requesting such a hearing.*" (Emphasis added.)

[7] General Statutes § 22a-361 is titled "Permit for dredging, structures, placement of fill, obstruction or encroachment, or mooring area or facility. Regulations. General permits. Removal of sand, gravel or other material. Fees. Prohibited docks or structures." Subsection (b) of § 22a-361 provides in relevant part: "The commissioner may hold a public hearing prior to approving or denying an application if, in the commissioner's discretion, the public interest will best be served by holding such hearing. The commissioner shall hold a public hearing if the commissioner receives: (A) A written request for such public hearing from the applicant, or (B) a petition, signed by twenty-five or more persons requesting such public hearing on an application."

[8] Bruce F. Cohen's petition for a public hearing contained thirty-four signatures, triggering a public hearing for purposes of §§ 22a-32 and 22a-361 (b).

[9] Section 22a-3a-6 (k) (1) (B) of the Regulations of Connecticut State Agencies provides: "A person shall be granted status as an intervening party if . . . [s]uch person has filed a written request stating facts which demonstrate that (i) his [or her] legal rights, duties or privileges will or may reasonably be expected to be affected by the decision in the proceeding, (ii) he [or she] will or may reasonably be expected to be significantly affected by the decision in the proceeding, or (iii) his [or her] participation is necessary to the proper disposition of the proceeding."

[10] General Statutes § 22a-19 provides: "(a) (1) In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state. . . .

"(2) The verified pleading shall contain specific factual allegations setting forth the nature of the alleged unreasonable pollution, impairment or destruction of the public trust in air, water or other natural resources of the state and should be sufficient to allow the reviewing authority to determine from the verified pleading whether the intervention implicates an issue within the reviewing authority's jurisdiction. For purposes of this section, 'reviewing authority' means the board, commission or other decision-making authority in any administrative, licensing or other proceeding or the court in any judicial review.

"(b) In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect as long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare."

[11] The hearing officer also determined that he could not consider the plaintiff's third argument, concerning the alleged "proliferation of permit applications," because "[his] review [was] limited to the current conditions and the impacts of the proposed structure on those conditions" and not "the cumulative impact from structures not built or applied for."

[12] Although written comments concerning the defendants' application were initially due on September 19, 2018, the hearing officer granted the commission's August 8, 2018 request to extend the written comment deadline until September 21, 2018.

[13] The plaintiff subsequently abandoned several of these claims. In her brief to the Superior Court, the plaintiff clarified that the issues she was pursuing on appeal were limited to the following: (1) the department, in the final decision, improperly shifted the burden of proof to the plaintiff to demonstrate "feasible alternatives" to the defendants' proposed dock; (2) the department erred in failing to determine whether feasible alternatives existed to the proposed dock, including a community dock located near the subject property; (3) the department misinterpreted and, therefore, violated

§ 22a-113n by failing to regard the commission's recommendation in the public comment letter concerning the defendants' proposed dock "as binding."

[14] Practice Book § 9-18, titled, "Addition or Substitution of Parties; Additional Parties Summoned in by Court," provides: "The judicial authority may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the judicial authority may direct that they be brought in. If a person not a party has an interest or title which the judgment will affect, the judicial authority, on its motion, shall direct that person to be made a party."

[15] General Statutes § 52-107, titled, "Additional parties may be summoned in," provides: "The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the court may direct that such other parties be brought in. If a person not a party has an interest or title which the judgment will affect, the court, on his application, shall direct him to be made a party."

[16] Specifically, the department contended that the hearing officer had previously denied the plaintiff's claim that her legal rights, duties or privileges would be affected by the decision in the proceeding and, accordingly, had limited her participation to three narrow environmental issues. Because the claims subject to the motion to dismiss did not allege "unreasonable impairment, destruction or pollution of the air, water, or natural resources of the state," the department contended that those claims exceeded the permissible scope of what the plaintiff could claim on appeal.

[17] The court also reiterated its determination that the plaintiff had standing to pursue all of her claims on administrative appeal. In particular, the court noted that the plaintiff's focus on the department's alleged procedural failures during the administrative proceedings, rather than environmental concerns posed by the defendants' proposed dock, was part of her trial strategy. As such, the court concluded that the plaintiff was not required to challenge the department's environmental findings to have standing on administrative appeal. The court then reiterated that the plaintiff adequately had alleged both classical and statutory aggrievement.

[18] The intervening plaintiffs argued, in the alternative, that they were entitled to permissive intervention should the court determine that they had not satisfied their burden of demonstrating intervention as a matter of right.

[19] In their brief to the Superior Court, the defendants renewed their argument that the intervening plaintiffs should not have been made parties to the administrative appeal. Specifically, the defendants argued that, because the commission never sought to intervene as a party in the administrative proceedings, the public comment letter was not "evidence in the record" upon which the department could decide the defendants' permit application. Accordingly, the defendants argued that the intervening plaintiffs had no basis upon which to overturn the department's decision.

[20] The Superior Court concluded that the plaintiff was both statutorily and classically aggrieved such that all of her claims were properly before the court. Because we conclude that the intervening plaintiffs' standing to pursue their § 22a-113n claim was not dependent on the plaintiff's standing to bring the same claim, it is irrelevant for purposes of the present claim for us to revisit the court's determination with respect to the plaintiff's standing. Moreover, for different reasons that are explained in part II of this opinion; see footnote 28 of this opinion; it is not necessary for us to determine whether the court properly determined that the plaintiff had standing to pursue the § 22a-113n claim in her appeal from the department's final decision.

[21] Although our Supreme Court has never decided the issue, it previously has noted that "[t]he whole point of intervention is to allow the participation of persons with interests distinct from those of the original parties; *it is therefore to be expected that an intervenor's standing will have a somewhat different basis from that of the original plaintiffs*." (Emphasis added; internal quotation marks omitted.) *Franco* v. *East Shore Development, Inc.*, 271 Conn. 623, 630, 858 A.2d 703 (2004). We construe this language to be consistent with the notion that an intervening party with an independent jurisdictional basis may continue to litigate in a proceeding even after the original party's claims have been dismissed.

[22] General Statutes § 4-175 provides in relevant part: "(a) If a provision of the general statutes, a regulation or a final decision, or its threatened application, interferes with or impairs, or threatens to interfere with or

impair, the legal rights or privileges of the plaintiff and if an agency (1) does not take an action required by subdivision (1), (2) or (3) of subsection (e) of section 4-176, within sixty days of the filing of a petition for a declaratory ruling, (2) decides not to issue a declaratory ruling under subdivision (4) or (5) of subsection (e) of said section 4-176, or (3) is deemed to have decided not to issue a declaratory ruling under subsection (i) of said section 4-176, the petitioner may seek in the Superior Court a declaratory judgment as to the validity of the regulation in question or the applicability of the provision of the general statutes, the regulation or the final decision in question to specified circumstances. The agency shall be made a party to the action. . . .”

[23] General Statutes § 4-176 provides in relevant part: “(a) Any person may petition an agency, or an agency may on its own motion initiate a proceeding, for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency. . . .

“(e) Within sixty days after receipt of a petition for a declaratory ruling, an agency in writing shall: (1) Issue a ruling declaring the validity of a regulation or the applicability of the provision of the general statutes, the regulation, or the final decision in question to the specified circumstances, (2) order the matter set for specified proceedings, (3) agree to issue a declaratory ruling by a specified date, (4) decide not to issue a declaratory ruling and initiate regulation-making proceedings, under section 4-168, on the subject, or (5) decide not to issue a declaratory ruling, stating the reasons for its action.”

[24] The defendants argue that the public comment letter did not specify how the proposed structure failed to comply with department policy and that the “the only recommendation in the [public comment letter] is to request that [the department] provide a statement of policy about docks situated below the [mean high water line].” (Emphasis omitted.)

[25] Section 22a-3a-6 (t) of the Regulations of Connecticut State Agencies provides that “[a]ny person who is not a party or intervenor nor called by a party or intervenor as a witness may make an oral or written statement at the hearing. Such a person shall be called a speaker. If the hearing officer is going to consider a speaker’s statement as evidence or if the speaker wants his statement to be considered as evidence, the hearing officer shall require that the statement be made under oath or affirmation and shall permit the parties and intervenors to cross-examine the speaker and to challenge or rebut the statement. A speaker may decline to be cross-examined, but the hearing officer shall strike from the record any comments by such speaker relating to the subject on which he declines to be cross-examined. The hearing officer may control the time and duration of a speaker’s presentation, and may exclude irrelevant, immaterial, or unduly repetitious comments by a speaker. A speaker shall not be entitled to cross-examine parties, intervenors, or other speakers or to object to evidence or procedure.”

[26] In the proposed final decision, the hearing officer noted: “While the [commission’s] public comment is not evidence in the record . . . I can rely on it to guide my inquiry into this matter. It is reasonable to assume that, if the [commission] believed that the proposed dock was in an area it had identified as inappropriate or unsuitable, it would have included a statement to that effect in its comment, for the purpose of guiding my inquiry into § 22a-361 (h). In making this assumption, I do not rely on the public comment as proof of any particular fact, but instead as a collective statement of the [commission], a group with extensive knowledge of, and a vested interest in, the [p]lan.”

[27] The intervening plaintiffs also contend that the legislative history underlying § 22a-113n cautions against our construction. Because, however, the statutory language unambiguously leads us to the conclusion that any recommendations made by harbor management commissions that are binding on the department must emanate from the harbor management plan, we decline to consider the extratextual sources on which the intervening plaintiffs rely. See, e.g., *Wilton Campus 1691, LLC* v. *Wilton*, 339 Conn. 157, 175–76, 260 A.3d 464 (2021) (“[b]ecause the statute, when read in context, has only one reasonable interpretation, the statute is not ambiguous, and we therefore do not consider the . . . legislative history or other extratextual sources”); see also General Statutes § 1-2z.

[28] In addition to the claims we address in this part of the opinion, the plaintiff also claims that § 22a-113n empowers harbor management commissions to make recommendations that are binding on the department concerning individual dock placements within their jurisdictions. In part I of this

opinion, we concluded, contrary to the plaintiff's claim, that § 22a-113n does not empower harbor management commissions to make recommendations that are binding on the department unless such a recommendation is made pursuant to an approved harbor management plan. The department and the defendants argue that the plaintiff lacks standing to pursue the § 22a-113n claim because she is neither classically nor statutorily aggrieved by any decision concerning the proper construction of that provision.

We recognize the general rule that aggrievement implicates this court's subject matter jurisdiction and that "[a] possible absence of subject matter jurisdiction must be addressed and decided whenever the issue is raised . . . ." (Internal quotation marks omitted.) *In re Ava W.*, 336 Conn. 545, 553, 248 A.3d 675 (2020). In the present case, however, our prior resolution, in part I of this opinion, of the same legal issue that the plaintiff raises here makes it unnecessary for us to consider whether we have jurisdiction to consider the plaintiff's claim. Regardless of whether the plaintiff is aggrieved by the determination regarding § 22a-113n, our prior resolution of the issue defeats her claim.

[29] Specifically, the hearing officer concluded that the plaintiff's allegations that motorboat access would result in "prop dredging" or negative "wave action" were too speculative to satisfy her burden.

[30] Specifically, the plaintiff contends that the trial court improperly failed to consider her claim that the deputy commissioner relied on "fictitious" case law in determining that the defendants were not required to produce evidence of the absence of feasible alternatives. The plaintiff's contention stems from a citation error in the final decision wherein the deputy commissioner purported to quote from *Waterbury* v. *Washington*, 260 Conn. 506, 800 A.2d 1102 (2002), but actually was paraphrasing language from that case describing the burden-shifting framework set forth in § 22a-17. The plaintiff alleges that the deputy commissioner's reliance on *Waterbury* was improper because that case involved a direct environmental action under § 22a-16 and not an environmental intervenor action pursuant to § 22a-19, such as in the present case. Accordingly, the plaintiff contends that the burden-shifting framework set forth in § 22a-17, which governs direct actions brought pursuant to § 22a-16, should not have been applied in the present case.

Even if we assume, however, that the deputy commissioner incorrectly applied the burden-shifting framework set forth in § 22a-17 against the plaintiff instead of against the defendants, the plaintiff is unable to demonstrate how she was harmed thereby. For the reasons that follow, we conclude that the hearing officer and deputy commissioner properly determined that the plaintiff was required to produce evidence that the defendants' proposed structure was reasonably likely to result in unreasonable pollution *before* the department was required to consider feasible alternatives. See General Statutes § 22a-19 (b). Because the plaintiff did not prove that unreasonable pollution was reasonably likely to result from the proposed structure, there was no basis for the department to consider feasible alternatives.

[31] We note that this interpretation aligns with the statutory burden-shifting framework that governs direct environmental actions under CEPA. See General Statutes §§ 22a-16 and 22a-17. To bring a direct environmental action in the Superior Court under § 22a-16, a plaintiff need allege only a colorable claim that "unreasonable pollution, impairment or destruction of a natural resource will probably result from the challenged activities unless remedial measures are taken." (Internal quotation marks omitted.) *Burton* v. *Commissioner of Environmental Protection*, 291 Conn. 789, 810, 970 A.2d 640 (2009).

After initiating the direct action, the plaintiff then carries the burden, under § 22a-17, of making a prima facie showing that the defendant's actions will have an unreasonable environmental impact. Only after the plaintiff makes a prima facie case does the burden shift to the defendants to produce evidence demonstrating that either the challenged action will not have an adverse environmental impact or that there are no feasible and prudent alternatives to the defendant's conduct. See *Waterbury* v. *Washington*, supra, 260 Conn. 550–51.

It is axiomatic that "the legislature is always presumed to have created a harmonious and consistent body of law . . . ." (Internal quotation marks omitted.) *Board of Education* v. *State Board of Education*, 278 Conn. 326, 333, 898 A.2d 170 (2006). It follows, therefore, that an intervening plaintiff under § 22a-19 (a) would similarly be required under § 22a-19 (b) to produce some evidence that the challenged action is reasonably likely to result in unreasonable environmental impact before the department is required to consider feasible and prudent alternatives.

[32] We note that the procedural posture in both *Paige* and *Evans* also

supports our conclusion that triggering the agency's consideration of feasible alternatives under § 22a-19 (b) requires more than successfully alleging intervenor standing under § 22a-19 (a). Indeed, there was no question that the plaintiffs in *Paige* and *Evans* had successfully joined the administrative proceedings pursuant to § 22a-19 (a). Had intervention in the proceedings been the only requirement necessary to trigger the agency's consideration of feasible alternatives under § 22a-19 (b), as the plaintiff suggests, our Supreme Court, and subsequently this court, would not have determined that a preliminary finding of unreasonable environmental impairment was necessary to trigger review of potentially feasible alternatives.

[33] The plaintiff argues, in the alternative, that she successfully met her burden of production required under § 22a-19. Specifically, the plaintiff contends that, "[i]n General Statutes § 22a-91, the General Assembly made legislative findings that the waters of Long Island Sound and its coastal resources, including tidal wetlands, are assets of great present and potential value to the economic well-being of the state, and that there is a state interest in the effective management, beneficial use, protection and development of these coastal resources. By virtue of these legislative findings, the simple fact that the structures are constructed entirely within tidal wetlands is sufficient, in and of itself, to satisfy the requirement of § 22a-19 of impairment or destruction of natural resources. All that remains is a showing that the impairment or destruction is unreasonable." (Footnote omitted.)

As we have explained previously in this opinion, an agency's consideration of feasible alternatives under § 22a-19 (b) requires a preliminary finding that the defendant's proposed action is likely, or is reasonably likely, to cause *unreasonable* environmental impairment. Accordingly, the plaintiff's argument, which concedes that the legislative finding, without more, does not demonstrate unreasonable impairment cannot trigger the department's consideration of feasible alternatives under § 22a-19 (b). Moreover, we note that the general policy statement set forth in § 22a-91 (5) cannot substitute for evidence of unreasonable environmental impairment related to the defendants' individual dock application. We conclude, therefore, that the plaintiff's argument must fail.

[34] The plaintiff also contends that the trial court's determination and, by extension, the proposed and final decisions, are "contrary to [the department's] guidelines," which encourage "[t]he sharing of docks by adjacent waterfront property owners." In particular, the plaintiff cites General Statutes § 22a-92 (b) (1) (H) (ii) to argue that the defendants were required to "utilize existing altered, developed or redevelopment areas," namely, the community dock located a short distance away from the proposed structure.

This court, however, previously has rejected the argument that the existence of a community dock limits the applicant's right to wharf and construct such a structure on his or her property. See *Lawrence* v. *Dept. of Energy & Environmental Protection*, supra, 178 Conn. App. 643–44 ("Whether [the applicant] should appropriately forgo its right to wharf because of the [community] facility is not the question—the existence of the community facility does not automatically preclude the right of [the applicant] to construct its pier. Rather, the issue is whether the [department] analyzed this application to construct a pier under the substantial evidence standard in light of our relevant environmental statutes, regulations, and other appropriate factors. . . . The [department] noted the salutary purpose of [§ 22a-92 (b) (1)] to utilize existing altered, developed or redevelopment areas, where feasible, is aimed at encouraging the smart development of coastal areas particularly facilities like marinas or state boat launches that are not necessarily limited to one particular upland parcel. . . . Yet, this goal must be balanced with the littoral owner's right to wharf and is subject to reasonable regulation." (Citation omitted; internal quotation marks omitted.)) We conclude, accordingly, that the plaintiff's argument is without merit.